Breitel, J.
The issue, in this proceeding to stay arbitration, is whether there was physical contact between an unidentified vehicle and the injured claimant’s automobile as contemplated by the Accident Indemnification Law (Insurance Law, § 617). An unidentified tractor-trailer combination approached claimant ’s automobile from an opposite direction. Snow and ice were dislodged from the tractor-trailer, striking and shattering claim *118 ant’s windshield and thus causing the injuries. Special Term and the Appellate Division allowed the arbitration. There should be a reversal, because there was no physical contact as contemplated by the statute.
The statute reads: “ The protection provided by this article shall not apply to any cause of action by an insured or qualified person arising out of a motor vehicle accident occurring in this state lying against a person or persons whose identity is unascertainable, unless the bodily injury to the insured or qualified person arose out of physical contact of the motor vehicle causing such bodily injury with the insured or qualified person or with a motor vehicle which the insured or qualified person was occupying at the time of the accident. The word ‘ occupying ’ means in or upon or entering into or alighting from.” (Insurance Law, § 617, emphasis supplied.)
The claim is made by claimant as an “ insured ’ ’ under the standard uninsured motorist endorsement appended to his own automobile insurance policy which, with respect to hit-and-run accidents, follows the statutory language and includes, therefore, the same limitations.
In MVAIC v. Eisenberg (18 N Y 2d 1) Judge Keating on behalf of the court discussed the purpose and scope of the remedial statute (Insurance Law, §§ 617, 618 ) in providing protection for innocent victims of " hit-and-run ’ ’ accidents involving unknown vehicles and yet deterring the prosecution of fictitious claims. In doing so, the court construed the term " physical contact ’ ’ in the statute as not limited to direct contact with the unidentified vehicle. It, therefore, sustained the remedy in favor of one who had been injured as a result of the offending vehicle pushing another vehicle into the claimant’s automobile. It was emphasized that the intermediate vehicle was merely an involuntary object which did not insulate MVAIG in that ease from responsibility under the statute. Other hypotheses were illustratively discussed: the offending vehicle striking a telephone pole which in turn is propelled into the claimant’s vehicle; the offending vehicle striking a motorcycle whose rider is propelled through the air into a pedestrian. Contrasted, as not involving the required physical contact, were deviations from the roadway caused by the menace of an oncom *119 ing vehicle, or a collision between two automobiles caused by the menace of still a third unidentified vehicle. These last illustrations, it was noted, in the absence of physical contact lacked objective evidence that an unidentified vehicle was involved and thus opened the door to fraud and collusion.
In this case below, and in some others, the construction in the Eisenberg case, embracing indirect as well as direct contact within the statutory term of physical contact, has been broadened to include causal nexus much too convoluted to fall either within the statute or its purpose even if the statute be given a most liberal heading (see, in addition to this case below, at 35 A D 2d 233: Matter of Colestock [Utica Mut. Ins. Co.], 28 A D 2d 1205; Gavin v. MVAIC, 57 Misc 2d 335; see, also, cases cited in Ann., Hit-and-Bun Vehicle — Physical Contact, 25 ALB 3d 1299,1304-1305, including cases decided prior to the Eisenberg case). Moreover, it is obvious that even more indirect relationships may occur or may be devised, almost without end, so that the statutory limitation may be denuded of all effect.
If the analysis, application, and illustrations in the Eisenberg case are considered, it is readily evident that the kind of contact required by the statute, even if not direct, must at least originate in collision. Thus, physical contact as contemplated by the statute may involve, it is true, the continued transmission of force indirectly and simultaneously through an intermediate agency, but the initial impact must, nevertheless, be that of a collision between the unidentified vehicle with the claimant, the vehicle occupied by him, an obstruction or other object causing the bodily injury. Excluded, therefore, are objects cast off or cast up by the hit-and-run vehicle, whether it be ice accumulated on the vehicle or pebbles or rocks or other debris on the roadway surface. Every transmission of force by a moving vehicle is not a collision, and the statute is concerned only with an initial collision by the unidentified vehicle with someone or something, and then a continued transmission of the colliding force with the injured person.
Several purposes are thus served. The kind of damage sustained by claimant or his automobile, or by the intermediate object, is more likely to evidence the existence of the unidentified hit-and-run vehicle and that it was the cause of the accident *120 (MVAIC v. Eisenberg, 18 N Y 2d 1, 5, supra). The definitional extension of the word “ contact ” in the controlling statute is not expanded beyond ordinary meaning; indeed, the only extension is not to limit contact to direct contact, a limitation not expressed in the statute. Perhaps most important, but in any event very important, is that requiring collision by the unidentified vehicle to initiate the sequence of physical events resulting in bodily injury, assures much greater probability that the offending vehicle was being operated negligently. There is only minimal probability in the great range of such accidents that the automobile operator’s negligence caused ice to accumulate on his vehicle or to become dislodged, and it is only a little more probable that negligent driving caused pebbles, rocks, dust, or other debris to be cast up by the vehicle’s wheels. In the rare case where negligence may be responsible for the accident, then there is no indemnification under the statute. Good examples of such negligently caused accidents, and yet not covered by the statute, would be those caused by objects cast off or falling from a speeding or insecurely laden hit-and-run vehicle itself, such as parts of the vehicle or its load. And this is hardly surprising, for in requiring physical contact with the offending vehicle to base responsibility under the statute the legislative purpose is evident; some negligently caused accidents are to be excluded or else the requirement of physical contact performs no function whatever. The reason for the exclusion is sufficiently developed in the opinion in the Eisenberg case; it is to deter fictitious claims, too easily contrived in the absence of physical contact.
Finally, the impulse to read the statute liberally and to effect its purpose must be limited by the language used. In statutory construction, purpose may permit a broad and even an unusually broad rendering of the statutory language. But purpose cannot be a warrant to go beyond the language used. The language is a limitation on construction even as the purpose may be a liberalizing factor (cf. e.g., Lanvin Parfums v. Le Dans, Ltd., 9 N Y 2d 516, 521; Bright Homes v. Wright, 8 N Y 2d 157, 161-162; see, also, McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 111, at pp. 230-232). The two factors must be accommodated. The Eisenberg case by its rule permitting physical contact with the offending vehicle to include indirect contact was a liberating *121 influence.* But the indirect contact, a broad construction in itself, cannot be then used again as a starting point to cover any indirect causation however convoluted, reducing the ‘ ‘ contact ’ ’ part of the statutory term to a nullity. Obviously most accidents have some physical beginning and the harm is almost always a physical consequence. The point is that between the two there must be a closer and more substantial physical nexus either in a single collision or in connected collisions.
Unfocused forces, whether produced by centrifugal force or ricochet, set off by a moving vehicle do not provide the kind of physical nexus contemplated by the statute nor understood in common parlance to constitute physical contact with the vehicle itself. On the other hand, common understanding does embrace within physical contact the limited indirect contact by collision through inert or inactive intermediate solid objects, as discussed in the Eisenberg case. The point also is that, as a matter of statutory construction, physical contact requires a narrower category of cause than would be understood in tort law as proximate cause, or again the statutory limitation would have no meaning. (For an excellent analysis, see Note: 20 So. Car. L. Rev. 790, in which the ramifications of the rule in the Eisenberg case are discussed.)
The issue involved here has troubled other courts and as may be expected there have been divergent conclusions (see Ann., Hit-and-Run Vehicle — Physical Contact, 25 ALR 3d 1299, esp. at pp. 1304-1305, supra; Notman, Study of Uninsured Motorist Endorsement, 43 Notre Dame Lawyer 5, 10-13; Aksen, Uninsured Motorist Claims, 24 Ohio St. L. J. 589, 602; Chadwick and Poche, Uninsured Motorists, 13 Hastings L. J. 194, 197-198; Note: 29 Brooklyn L. Rev. 286, 294-295; Comment: 42 Tulane L. Rev. 352, 364U365). It is not an issue easy to resolve or a test easy to apply. Nor may one be confident that any verbal formulation, however precise one might wish to make it, could or would embrace every conceivable combination of events which may arise. The goal is to accord every liberal extension to the remedial statute but not to the point of judicially removing *122 the meaning and frustrating the purpose of limiting language deliberately inserted into the statute (e.g., Fontheim v. Third Ave. Ry. Co., 281 N. Y. 392, 394; 56 N. Y. Jur., Statutes, §§ 109, 168; see, also, id. § 229).
Accordingly, the order of the Appellate Division should be reversed, without costs and the arbitration stayed.

 For post-Eisenberg eases involving impacts with intermediate vehicles, see Matter of Powers (Continental Ins. Co.) (29 A D 2d 1041); Matter of Shamrock Co. (Mack) (61 Misc 2d 240); Matter of Holad v. MVAIC (53 Misc 2d 952); Matter of Greco (MVAIC) (53 Misc 2d 344).