652 P.2d 556

**Paul ANDERSON and Dusty Ellington, Plaintiffs-Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.**

**No. 1 CA–CIV 5340.**

Court of Appeals of Arizona, Division 1, Department B.

April 6, 1982.

Rehearing Denied May 10, 1982.

Review Granted June 22, 1982.

Hofmann, Salcito & Stevens, P.A. by Leroy W. Hofmann, Phoenix, for defendant-appellee.

Levine & Harris, P.C. by Jack Levine, Phoenix, for plaintiffs-appellants.

OPINION

R. PORTER MURRY, Judge (Retired).

Paul Anderson and Dusty Ellington appealed from the granting of a summary judgment in favor of State Farm Mutual Insurance Company. This appeal challenges the right of State Farm to limit its liability under its uninsured motor vehicle coverage to exclude damages caused by an unidentified vehicle which has caused another vehicle to be propelled into the insured's vehicle.

The facts in this case are undisputed. On February 15, 1978, appellants Paul Anderson and Dusty Ellington were occupying a motor vehicle which was stopped in traffic at the intersection of Dobson Road and State Route 360 when their vehicle was rearended by another vehicle owned by the Purolator Courier Corporation and driven by its employee. The Purolator employee claimed that he was struck from behind by a third vehicle which left the scene before anyone could identify it. There was affirmative evidence found by the investigating police officer indicating that the rear of the Purolator vehicle had been contacted by a third vehicle. At no time was there ever any contact between the unidentified third vehicle and the vehicle occupied by appellants.

Appellants filed suit against appellee State Farm for recovery of uninsured motorist policy benefits provided in an auto-

mobile liability policy carried by Dusty Ellington.[1]

Under the uninsured motor vehicle coverage of its policy, State Farm agrees to pay the insured:

all sums which the *insured* or his legal representative shall be legally entitled to recover as damages from the owner or operator of an *uninsured motor vehicle* because of *bodily injury* sustained by the *insured,* caused by accident and arising out of the ownership, maintenance or use of such *uninsured motor vehicle* .... (Emphasis in original).

The insurance policy further defines uninsured motor vehicle as including "a hit-and-run motor vehicle." A hit-and-run motor vehicle is then defined in the policy as follows:

Hit-and-Run Motor Vehicle—means a land motor vehicle which causes *bodily injury* to an *insured* arising out of physical contact of such vehicle with the *insured* or with a vehicle which the *insured* is *occupying* at the time of the accident, provided:

(1) there cannot be ascertained the identity of either the operator or owner of such *hit-and-run motor vehicle;* (Emphasis in original).

In order to fall within the definition of hit-and-run motor vehicle, this provision requires that there be "physical contact" of the unidentified vehicle with the insured or with the vehicle which the insured was occupying at the time of the accident.

The parties filed cross motions for summary judgment. Appellants contended that the collision initiated by physical contact between the "hit-and-run" vehicle and the Purolator van, which in turn collided with appellants' vehicle, substantially satisfies the purpose and intent of the previously quoted uninsured motorist provisions of the policy. State Farm's motion for summary judgment asserted that since the uncontested facts established that there was no physical contact between the unidentified vehi-

cle and the insured's vehicle, the unidentified vehicle did not fall within the definition of "hit-and-run motor vehicle" of the policy and was, therefore, not within the definition of "uninsured motor vehicle."

On January 3, 1980, the trial court entered an order granting State Farm's motion for summary judgment and denying appellants' motion for summary judgment. Appellants filed a motion for new trial which was denied and this appeal was taken. We affirm the trial court.

Appellants concede that *Balestrieri v. Hartford Accident & Indemnity Insurance Co.,* 112 Ariz. 160, 540 P.2d 126 (1975) specifically held that a "physical contact" requirement in a "hit-and-run" provision of an automobile liability insurance policy was not in derogation of Arizona's uninsured motorist statute nor was it void as against public policy. However, appellants attempt to distinguish *Balestrieri* on the basis that, unlike the instant case, *Balestrieri* did not involve contact between an intervening vehicle and the insured's vehicle. Appellants argue that the intent of A.R.S. § 20–259.01 is to protect innocent persons and that the "physical contact" requirement is primarily designed as a matter of proof to prevent fraudulent claims. Appellants then point out that evidence of the unidentified vehicle's physical contact with the Purolator van supports the bona fide nature of their claim. Thus, they conclude that the policy reasons in *Balestrieri* for denying recovery for accidents allegedly caused by "phantom vehicles" are not present in the instant case. However, our supreme court's opinion in *Balestrieri* is not limited to upholding the physical contact requirement in an uninsured motorist policy because it is designed to prevent fraudulent claims. Rather, the court stated:

Of the states in this legislative category [states with uninsured motorists statutes similar to that of Arizona] which have considered the issue before us, two divergent lines of authority appear to have developed. One view is that the physical

---

1. Appellants also filed separate actions against Purolator Courier Corporation and its employ- ee driver. These actions are not involved in this appeal.

contact restriction is in conflict with the uninsured motorist statute and is violative of the state's public policy. [Citations omitted].

\* \* \* \* \* \*

Other courts have held under identical statutes, however, that the physical contact rule is consistent with both the uninsured motorist statute and public policy. [Citations omitted]. Central to their reasoning is the determination that *the statute was intended to apply only when the negligent party actually is without insurance coverage.* Since no presumption of lack of insurance may arise in instances where the negligent party remains unidentified, the statutory definition of uninsured vehicle cannot encompass "phantom" vehicles.

Although our courts have said that the Arizona uninsured motorist statute is to be liberally construed in accordance with its remedial purposes, [citations omitted] it also has been noted that "uninsured" within this section means literally "not insured." [Citations omitted].

\* \* \* \* \* \*

*The fact that the phrase "unknown motorist" was deleted from the statute in its enacted form indicates a conscious legislative design to exclude unidentified motorists from the act's coverage.* Furthermore, our legislature has not recognized the need to amend the term "uninsured motor vehicles" notwithstanding the judicial controversy surrounding its meaning.

\* \* \* \* \* \*

Because the hit-and-run provision is neither required nor prohibited by the Arizona uninsured motorist statute, *the physical contact requirement is a matter of contract between the insurer and insured which we will not disturb.* (Emphasis added).

112 Ariz. at 162–163, 540 P.2d at 128–129. *See also Gardner v. Aetna Casualty & Surety Co.,* 114 Ariz. 123, 559 P.2d 679 (App. 1976).

The dissent in this matter takes the position that the insurance clause in question is ambiguous (an issue not raised by either party). Not only does the dissent fail to point out where the ambiguity lies, it relies only upon the case of *Johnson v. State Farm Mutual Automobile Ins. Co.,* 70 Wash.2d 587, 424 P.2d 648 (1967), for this conclusion, which suffers from the same deficiency in analysis. The cases from other jurisdictions cited in the dissent (from California and New York) are based upon statutory requirements and the ascertaining of legislative intent based upon public policy considerations. Both jurisdictions found the "physical contact" provision of their statutes were intended by the legislature to limit fraudulent claims by "phantom" automobiles and that if the fraudulent claim concern was satisfied, (by proving that the unidentified vehicle struck a known vehicle which struck the insured) then the legislative intent was satisfied. *See Motor Vehicle Acc. Indem. Corp. v. Eisenberg,* 18 N.Y.2d 1, 271 N.Y.S.2d 641, 218 N.E.2d 524 (1966); *Inter-Insurance Exchange of Auto Club of So. Cal. v. Lopez,* 238 Cal.App.2d 441, 47 Cal.Rptr. 834 (1966).

We are not here dealing with legislative enactments and public policy, but as *Balestrieri* makes clear, a private contract. While legislature may enact "physical contact" hit-and-run legislation in order to avoid fraudulent claims, private parties may write such insurance on actuarial considerations dealing with risk of loss and cost recovery. It may well be that insurance companies are willing to write hit-and-run insurance coverage, where not statutorily required, because studies may have shown that where the unidentified vehicle actually strikes the insured, the risk that the unidentified vehicle will "run" and thus remain unidentified, is minimal.

To change the parties' legitimate contract expectations, under the guise of ambiguity, may simply force insurance companies to delete such voluntary coverage to avoid judicial rewriting of their contracts.

The contract between the parties to this litigation requires "physical contact *of such vehicle* [the unidentified vehicle] with the insured or with a vehicle which the insured

is occupying at the time of the accident. ..." (Emphasis added). This language is plain and unambiguous and a majority of this court will not rewrite the contract between the parties. We conclude that the trial court correctly granted summary judgment in this matter.

Judgment affirmed.

JACOBSON, P.J., concurs.

GRANT, Judge, dissenting.

I respectfully dissent. The court's opinion today in no manner adequately addresses the critical question posed by this case: Is an indirect collision between a hit-and-run automobile and an insured's vehicle sufficient to satisfy the "physical contact" requirement contained in the uninsured motorist clause of the insured's automobile liability policy? Citing *Balestrieri v. Hartford Accident & Indemnity Insurance Co.,* 112 Ariz. 160, 540 P.2d 126 (1975), the majority quickly concludes that there has been no such prerequisite physical contact when a hit-and-run vehicle collides with an intermediary automobile, causing it in turn to collide with the insured's vehicle. However, *Balestrieri* holds merely that inclusion of hit-and-run coverage in an automobile insurance contract is neither mandatory nor forbidden under Arizona's uninsured motorist statute and state public policy. Therefore, imposition of a physical contact requirement as a condition precedent to an insurer's liability under such a hit-and-run clause is purely a matter of contract between the insurer and insured. 112 Ariz. at 163, 540 P.2d at 129. *Balestrieri* does not deal with the nature of physical contact required before an insured may collect under the uninsured motorist provision of his or her insurance policy. Indeed, it was undisputed in *Balestrieri* that there was absolutely no contact between the "hit-and-run" vehicle and the insured's automobile, which struck a light pole after swerving to avoid the unidentified car. For this reason, *Balestrieri* itself does not speak to the precise issue in the case *sub judice.*

The majority would take the contractual "physical contact" language at its face value, denying recovery in every situation except where the unidentified vehicle has made actual, direct contact with the insured or a car he or she occupies. This analysis is simplistic. Although made in the context of statutory construction, the comments of former Chief Judge Benjamin Cardozo are instructive:

> Few words are so plain that the context or the occasion is without capacity to enlarge or narrow their extension. The thought behind the phrase proclaims itself misread when the outcome of the reading is injustice or absurdity. Adherence to the letter will not be suffered to "defeat the general purpose and manifest policy intended to be promoted".

*Surace v. Danna,* 248 N.Y. 18, 21, 161 N.E. 315, 316 (1928) (citations omitted). The case we consider today presents sufficient facts from which may be inferred a meaning other than that given to the physical contact requirement by the majority. The inquiry must delve more deeply.

There is a fundamental difference between cases such as *Balestrieri,* where an allegedly "phantom" vehicle causes another to swerve and crash or leave the road, without actually hitting it, and those in which the phantom actually makes contact with one car, causing it to then collide with another. The basic policy behind a "physical contact" requirement in hit-and-run cases, protection of the insurer from fraudulent claims, legitimately works to bar recovery in cases of the former type. There is great motivation for drivers in single car accidents to fabricate hit-and-run stories in order to collect on their insurance policies. Technically, these cases are not hit-and-runs at all, for there has been no hit. *See Gardner v. Aetna Casualty & Surety Co.,* 114 Ariz. 123, 559 P.2d 679 (App.1976); *Page v. Insurance Co. of North America,* 256 Cal. App.2d 374, 64 Cal.Rptr. 89 (1967). As to the latter class however, where evidence of an actual collision with a hit-and-run vehicle exists, the purpose behind the requirement fades and mechanical application of the physical contact provision to bar recovery becomes not only meaningless, but ineq-

uitable. Where there is indisputable evidence that a phantom vehicle did exist, as where it actually collided with one vehicle, there is little rational justification for failing to at least initially recognize the veracity of the insured's claim. Allowing an insured the opportunity to prove his case where indirect physical contact has occurred does no violence to the policy and manifest objective of protecting insurers from facially fraudulent claims. Indirect contact constitutes as legitimate a predicate for liability under physical contact clauses as does direct contact. *See* J. Appleman, Insurance Law and Practice § 5095.25 (1981); I. Schermer, Automobile Liability Insurance § 30.02[1] (2d ed. 1981); Annot., 25 A.L. R.3d 1299 (1969).

Cases from other jurisdictions are both supportive and clear. Although the physical contact requirement is legislatively imposed by California and New York, in each state the statutory formulation is almost identical to the contract language in this case. In *Inter-Insurance Exchange v. Lopez,* 238 Cal.App.2d 441, 47 Cal.Rptr. 834 (1965), the California Court of Appeals held that indirect contact, of the sort here involved, satisfied the physical contact requirement for recovery under its uninsured motorist provision. The court stated that:

> The requirements of physical contact and notice are intended to prevent frauds, not to lessen the coverage extended to innocent motorists. We believe the physical contact requirement, designed to prevent false claims, should not be extended to defeat recovery in cases where fraud clearly does not exist.

238 Cal.App.2d at 446, 47 Cal.Rptr. at 837 (citations omitted). Likewise, one year later the New York Court of Appeals held that under its statutorily prescribed uninsured motorist provision, the physical contact requirement was satisfied by indirect contact through a third, intermediary vehicle as well as by actual contact between the insured and the hit-and-run automobile. *Motor Vehicle Accident Indemnification Corp. v. Eisenberg,* 18 N.Y.2d 1, 271 N.Y. S.2d 641, 218 N.E.2d 524 (1966). The *Eisenberg* court considered that:

> [I]t is ... apparent that the *actual* contact situation is juridically indistinguishable from the situation in the present case. The vehicle which made *actual* contact with the appellant's automobile in this case was a mere involuntary intermediary and, in the circumstances, we think it cannot logically serve to insulate the respondent ....

18 N.Y.2d at 4, 271 N.Y.S.2d 641, 218 N.E.2d at 525 (emphasis in original).

Again, but one year later still, the same result was reached in two separate cases construing not statutory provisions, but contract language, as in the present case. Both the United States Court of Appeals for the Fifth Circuit, in *State Farm Mutual Automobile Insurance Co. v. Spinola,* 374 F.2d 873 (5th Cir.1967), and the Washington Supreme Court, in *Johnson v. State Farm Mutual Automobile Insurance Co.,* 70 Wash.2d 587, 424 P.2d 648 (1967), in construing exactly the same provision as is before the court today, have held that the physical contact requirement is satisfied where the insured's vehicle is struck by a known intermediary automobile, after that vehicle was propelled into it by an unidentified hit-and-run vehicle. In *Johnson,* a case literally on "all fours" with ours, the Washington Supreme Court reasoned that:

> Had [the insurer] intended the provision to apply only where there is actual and immediate, as opposed to indirect, physical contact between the hit-and-run vehicle and the vehicle of the insured, it should have so provided in unmistakably clear language. Language used in the policy was of [the insurer's] choosing, and any ambiguities therein will be resolved against it.

70 Wash.2d at 590, 424 P.2d at 650 (citation omitted). *See Lord v. Auto-Owners Insurance Co.,* 22 Mich.App. 669, 177 N.W.2d 653 (1970); *Latham v. Mountain States Mutual Casualty Co.,* 482 S.W.2d 655 (Tex.Civ.App. 1972).

To blindly apply the language here involved so that appellant is entirely precluded from resort to the trial court would be

an oversimplified, and somewhat naive, view of the insurance contract. Where the generally recognized purpose and policy behind such a provision fail to be served by technically strict construction of its terms, and where the words themselves are susceptible of multiple meanings, we must seek sensible interpretations rather than absurd results. I would reverse the summary judgment.

NOTE: The Honorable R. PORTER MUR-RY, a Retired Judge of a court of record, was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to Arizona Const. art. VI, § 20.