652 P.2d 537

**Paul ANDERSON and Dusty Ellington, Plaintiffs-Appellants,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.**

**No. 16059–PR.**

Supreme Court of Arizona, In Banc.

Oct. 4, 1982.

Levine & Harris, P.C. by Jack Levine, Phoenix, for plaintiffs-appellants.

Hofmann, Salcito, Stevens & Meyers, P.A. by Leroy W. Hofmann, Phoenix, for defendant-appellee.

CAMERON, Justice.

On 3 January 1980, a summary judgment was granted in favor of defendant State Farm Mutual Automobile Insurance Company in an action to recover for injuries suffered in an automobile accident. The Court of Appeals affirmed. *Anderson v. State Farm Mutual Automobile Insurance Company*, 133 Ariz. 483, 652 P.2d 556 (1982). Paul Anderson and Dusty Ellington, plaintiffs below, filed a petition for review by this court. We have jurisdiction pursuant to A.R.S. § 12–120.24.

■ We must answer only one question: Does an automobile collision which occurs when a hit-and-run driver propels a second vehicle into the plaintiffs' car satisfy the "physical contact" requirement of plaintiffs' "uninsured motorist" insurance coverage?

The facts necessary to a determination of this appeal are as follows. While stopped at a traffic light, Dusty Ellington's vehicle was "rear-ended" by a Purolator Courier van. Ellington and his passenger, Paul Anderson, suffered personal injuries. The evidence indicates that the Purolator van had been struck and pushed into Ellington's car by a third vehicle, which had sped away from the scene of the accident before anyone could identify it or the driver. It is undisputed that the third vehicle never came in direct contact with Ellington's car.

Anderson and Ellington filed a claim with State Farm Mutual Automobile Insurance Company under the uninsured motorist provision of State Farm's policy. Under the policy, an uninsured motor vehicle includes a hit-and-run automobile. A hit-and-run automobile is defined by the policy as

" * * * an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident * * * "

and the identity of the operator or owner of such "hit-and-run automobile" cannot be ascertained. When State Farm denied coverage, Anderson and Ellington filed suit against State Farm, as well as Purolator Courier Company and the driver of the Purolator van. The trial court granted summary judgment in favor of State Farm.

The Court of Appeals affirmed, finding that there had been no physical contact between the hit-and-run vehicle and Ellington's car that would trigger the uninsured motorist provisions of the policy. The Court of Appeals reasoned that the requirement of physical contact was a matter of private contract. Since the provision did not violate public policy, the court declined to modify it. *Balestrieri v. Hartford Accident & Indemnity Insurance Company*, 112 Ariz. 160, 540 P.2d 126 (1975). Judge Sarah Grant dissented, urging that the majority had not adequately addressed the question of whether there had been physical contact between the vehicles which would satisfy the requirement of the policy. She concluded that where there is indisputable evidence that a third vehicle existed and caused the collision, indirect impact qualifies as "physical contact" within the terms of the policy.

Because we agree with the dissent, we granted plaintiffs' petition for review of the Court of Appeals decision and opinion.

The standard provision for coverage in an accident involving a hit-and-run vehicle requires that the injury result from "physical contact" of the hit-and-run vehicle with the insured or with the vehicle the insured was occupying at the time of the accident. R.G. Notman, A Decennial Study of the Uninsured Motorist Endorsement, 43 Notre Dame Lawyer 5 (1967); 25 A.L.R.3d 1299 (1969). The requirement of physical contact was designed to prevent fraudulent claims, such as when a driver fabricates a hit-and-run car to collect insurance for an accident actually caused by his own negligence. A. Widiss, A Guide to Uninsured Motorist Coverage, 1981 Supplement, § 2.41. In *Balestrieri v. Hartford Accident & Indemnity Insurance Company, supra,* we upheld the physical contact requirement in private insurance contracts, finding that it was not in derogation of Arizona's uninsured motorist statute nor void as against public policy. In *Balestrieri, supra,* we pointed out that even though insurance carriers are required to include uninsured motorist coverage in the motor vehicle liability policies they write, A.R.S. § 20–259.01, hit-and-run coverage is a matter of contract between the insurance company and its insured. We also held that the requirement of physical contact is not an unreasonable limitation on uninsured motorist coverage. *Balestrieri v. Hartford Accident & Indemnity Insurance Company, supra.* However, we did not, in *Balestrieri,* determine what was "physical contact" under the policy.

The vast number of factual situations in which injury is caused by an unidentified vehicle has lead jurisdictions to interpret "physical contact" in very different ways. For example, the Court of Appeals of Indiana found that a rock which was thrown from the wheels of an unidentified vehicle and struck the windshield of a car, killing the passenger, was enough to constitute physical contact. The court reasoned there was a "substantial nexus between the hit-and-run vehicle and the intermediate object" and that the transmitted force was "continuous and contemporaneous" and concluded that there was physical contact within the meaning of the policy. *Allied Fidelity Insurance Company v. Lamb,* 361 N.E.2d 174, 178 (Ind.App.1977). On the other hand, the Court of Appeals of New York found no physical contact in the impact of snow and ice which dislodged from an unidentified tractor-trailer and struck the plaintiff's car, shattering the windshield and injuring the plaintiff. The court acknowledged that physical contact need not be direct, but held that it must originate in collision. Its rule therefore excluded objects cast off or cast up by the unidentified vehicle. *Smith v. Great American Insurance Company,* 29 N.Y.2d 116, 324 N.Y.S.2d 15, 272 N.E.2d 528 (1971).

Physical contact was found in *Inter-Insurance Exchange of the Automobile Club of Southern California v. Lopez,* 238 Cal. App.2d 441, 47 Cal.Rptr. 834 (1965), where a hit-and-run vehicle struck another car, which crossed the median and hit the plaintiff's oncoming car. The Court of Appeals of California reasoned that this was a direct application of force which qualified as physical contact. The court drew a parallel to common law tort, under which an unwanted touching by the defendant or an article set in motion by the defendant ("trespass vi et armis") was distinguishable from injury caused by colliding with an object already in place ("trespass on the case"). The court concluded that the former, direct contact, which included injury from any intermediate object, was physical contact within the meaning of the statute. The Court of Appeals of New York reached a similar conclusion in *Motor Vehicle Indemnification Corporation v. Eisenberg,* 18 N.Y.2d 1, 271 N.Y. S.2d 641, 218 N.E.2d 524 (1966), where a vehicle crossed the median and hit the insured's car after being struck by a hit-and-run driver. The court found this accident to be equivalent to actual contact, since the car crossing the median was merely an involuntary intermediary. The court indicated that the same principle would operate to extend coverage if a hit-and-run car were to strike a telephone pole and push it

onto another car; or if a hit-and-run vehicle struck a motorcycle whose rider was thrown onto a passer-by. See also *Springer v. Government Employees Insurance Company, Inc.,* 311 So.2d 36 (La.1975), for a proximate cause analysis of injury caused by a car that crossed the median. A number of courts have been faced with a "chain reaction" situation where an intermediate vehicle transmits the impact from a hit-and-run car to the insured's car. Citing sources as diverse as Sir Isaac Newton and the Restatement (2d) of Torts, courts have held that the interference of an intermediate object does not negate physical contact. *Lord v. Auto-Owners Insurance Company,* 22 Mich.App. 669, 177 N.W.2d 653 (1970); *Latham v. Mountain States Mutual Casualty Company,* 482 S.W.2d 655 (Tex.App. 1972); *Ray v. DeMaggio,* 313 So.2d 251 (La. 1975); *Johnson v. State Farm Mutual Automobile Insurance Company,* 70 Wash.2d 587, 424 P.2d 648 (1967); see also the discussion in *Inter-Insurance Exchange of the Automobile Club of Southern California v. Lopez,* supra.

As these cases illustrate, courts have not read the requirement of physical contact as an unambiguous limitation of liability. Rather, the trend is to construe "physical contact" broadly in order to effectuate the purposes of uninsured motorist protection. J.A. Appleman, Insurance Law and Practice, § 5095.25; Notman, A Decennial Study of the Uninsured Motorist Endorsement, supra; *Inter-Insurance Exchange of the Automobile Club of Southern California v. Lopez,* supra; *Motor Vehicle Accident Indemnification Corporation v. Eisenberg,* supra.

▮ In the instant case, it is evident that there was a vehicular collision with the hit-and-run car, and that the force of the unidentified car hitting the Purolator van was the cause of the collision between the van and the plaintiff's car, from which the injuries resulted. Under these circumstances, we have no difficulty concluding that the injuries were the result of physical (albeit indirect) contact with the hit-and-run vehicle. Where force has been exerted

from an unidentified vehicle through an intermediate object and where this fact may be verified in such a way to provide safeguards against fraud, we find that the physical contact requirement of the policy has been satisfied. See *Allied Fidelity Insurance Company v. Lamb,* supra; *Motor Vehicle Accident Indemnification Corporation v. Eisenberg,* supra. In the instant case, the insurance contract did not clearly express an intention to exclude indirect contact cases from coverage. We have stated:

"Where the language employed [in insurance policies] is unclear and can be reasonably construed in more than one sense, an ambiguity is said to exist and such ambiguity will be construed against the insurer." *Sparks v. Republic National Life Insurance Co.,* 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (1982). See also *Allied Fidelity Insurance Company v. Lamb,* supra.

State Farm contends, however, that this interpretation is contrary to the principles of *Balestrieri v. Hartford Accident & Indemnity Insurance Company,* supra. Although in *Balestrieri* we discussed various interpretations of the standard hit-and-run provision, we stated that:

"The legal issue presented for our decision is narrow and can be precisely phrased—whether the 'physical contact' requirement in the 'hit-and-run' provision of the automobile liability insurance policy here under consideration is in derogation of the Arizona "uninsured motorist statute and is void as against public policy." *Balestrieri v. Hartford Accident & Indemnity Insurance Company,* supra, 113 Ariz. at 161, 540 P.2d at 127.

*Balestrieri* did not decide the question that faces us today of what constitutes "physical contact." It was clear in *Balestrieri* that there was no physical contact—the plaintiff swerved to avoid an unidentified car and struck a light pole. In other words, it was a "miss-and-run" case in which there was no collision by the unidentified vehicle on which a claim of "physical contact" could be based. In contrast, the instant case was a chain reaction in which the hit-and-run ve-

hicle actually struck another car and propelled it into the plaintiffs' car. The holding in *Balestrieri* does not preclude us from finding that "physical contact" occurred in the instant case.

Reversed and remanded for further proceedings consistent with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS, J., concur.

FELDMAN, Justice, specially concurring.

I concur in the result, but arrive by a different and more direct path. While the majority holds today that the physical contact requirement of the "hit-and-run" provision in the uninsured motorist coverage is ambiguous and therefore satisfied by indirect contact, I would simply hold that the physical contact provision does not prevent recovery because it is in derogation of statute and is, therefore, void as against public policy.

It has long been the law in Arizona that an insurer cannot limit or restrict coverage required by law unless the restriction is allowed by the statute. *Jenkins v. Mayflower Insurance Exchange*, 93 Ariz. 287, 380 P.2d 145 (1963) (dealing with the Financial Responsibility Act, A.R.S. §§ 28–1101 to 28–1234, 28–1170). Therefore, the first issue which must be met in this case is the question of whether a restriction of uninsured motorist coverage by excluding some or all accidents caused by "hit-and-run" vehicles violates A.R.S. § 20–259.01, which *requires* motor vehicle liability insurers to provide uninsured motorist coverage with or supplemental to the liability coverage required by § 28–1170.

The resolution of the issue requires us to decide whether a hit-and-run automobile is an "uninsured motor vehicle" within the scope of A.R.S. § 20–259.01. If not, then the insurer may limit the hit-and-run coverage. *Lawrence v. Beneficial Fire & Casualty Ins. Co.*, 8 Ariz.App. 155, 444 P.2d 446 (1968). However, if a "hit-and-run" automobile is an "uninsured motor vehicle" within the meaning of the statute, then the parties cannot detract from the coverage by requiring actual physical contact. *Jenkins v. Mayflower Insurance Exchange, supra; Balestrieri v. Hartford Accident & Indemnity Insurance Co.*, 112 Ariz. 160, 540 P.2d 126 (1975).

In *Balestrieri*, we held that the statutory mandate for coverage was limited to those situations in which it could be ascertained that the alleged negligent vehicle was actually uninsured. *Id.* at 163, 540 P.2d at 129. Thus, the insurer was not required to cover "hit-and-run" situations where there was no way to establish that the unidentified vehicle was, in fact, an uninsured vehicle.

Three reasons were given for this conclusion. The first was that we found ". . . no statement of legislative intent to cast uncertainty upon our construction of the statute." *Id.* The court noted that the original title of the act when first introduced in the state senate included words prescribing "an uninsured motorist and unknown motorist clause." The opinion points out: "The fact that the phrase 'unknown motorist' was deleted from the statute in its enacted form indicates a conscious legislative design to exclude unidentified motorists from the act's coverage." *Id.* Subsequent research has revealed that this statement was incorrect. The words "unknown motorist clause" were part of the statute as enacted; they were deleted *after* enactment and before signature of the bill by the governor as the result of a clerical or drafting error in formulating the title to A.R.S. § 20–259.01. *See* Note, *Uninsured Motorist Coverage*, 14 Ariz.L.Rev. 600, 604 (1972). In fact, the proponents of the legislation had contemplated that the words "uninsured motor vehicle" would include "unknown" or unidentified vehicles. *Id.* n. 27.

The second premise for the *Balestrieri* decision was that the terms of the statute were clear and unambiguous in specifying coverage for injury caused by "uninsured motor vehicles." The court pointed out:

It is a fundamental rule of statutory construction that plain, clear and unambiguous language of a statute is to be given that meaning *unless impossible or absurd consequences may result.* For us to ex-

tend coverage in this situation would be tantamount to rewriting and varying the plain language of the statute. This we are not empowered to do.

*Balestrieri, supra* at 163, 540 P.2d at 129 (citation omitted, emphasis supplied). This reasoning also does not support the decision because it is now apparent that the construction given the statute by *Balestrieri* creates an absurd loophole in the comprehensive legislative scheme of coverage for victims of motor vehicle accidents.

A.R.S. § 28–1170 specifies the coverage to be contained in a certified owner's and nonowner's liability policy. This court has previously held that the statute was applicable both before and after certification of the policy, basing that decision upon a finding of a legislative intent to provide "security against uncompensated damages" arising from motor vehicle accidents. *Jenkins v. Mayflower Insurance Exchange, supra* at 290, 380 P.2d at 147 (quoting *Schecter v. Killingsworth*, 93 Ariz. 273, 280, 380 P.2d 136, 140 (1963)). The legislature has confirmed this interpretation by its latest enactment of mandatory auto insurance under an affirmation plan. *See* 1982 Ariz.Legis. Serv., Ch. 298, §§ 12, 24 (West) (to be codified at A.R.S. § 28–1170). The legislature enacted the uninsured motorist statute (A.R.S. § 20–259.01) to "close the gap" in the Financial Responsibility Act by protecting those who are injured by the negligence of financially irresponsible motorists. *Kraft v. Allstate Insurance Company*, 6 Ariz.App. 276, 431 P.2d 917 (1967). From the beginning, our courts have given that statute a liberal construction in order to effectuate its remedial purpose. *Allstate Insurance Company v. Pesqueria*, 19 Ariz. App. 528, 508 P.2d 1172 (1973); *Reserve Insurance Company v. Staats*, 9 Ariz.App. 410, 453 P.2d 239 (1969); *Geyer v. Reserve Insurance Company*, 8 Ariz.App. 464, 447 P.2d 556 (1968). This liberal construction of the uninsured motorist statute was reinforced by the subsequent legislative amendments of that statute requiring the offer of coverage for injuries caused by "underinsured motor vehicles." 1982 Ariz.Legis. Serv., Ch. 298 § 1 (West) (to be codified at A.R.S. § 20–259.01).

Thus, by the interaction of legislation and judicial decision, Arizona has created a scheme of required liability insurance, compulsory uninsured motorist coverage and available underinsured coverage. No contractual exceptions are allowed in the policy unless permitted by statute. The obvious and avowed design in this comprehensive scheme is that a legislatively prescribed minimum source of compensation shall be *available* to "protect the public from financial hardship" caused by financially irresponsible drivers. *Schecter v. Killingsworth, supra*. No "gap" in that scheme exists in Arizona law except for that allowed by *Balestrieri*, which holds that a victim who had the misfortune to have been injured as the result of the negligence of a driver who did not stop to identify himself is not covered. I can conceive of no reason why the legislature would have intended this small class of claims to be excluded from the scheme of compensation.

No radical change in philosophy or interpretation is required for this court to correct the error made in *Balestrieri*. While the *Balestrieri* opinion gives as its third basis the conclusion that the statute "... contemplates that proof of the identity of the owner or operator of the uninsured motor vehicle should be shouldered by the insured [because] otherwise it could not be ascertained whether the alleged negligent vehicle was [actually] uninsured" (112 Ariz. at 163, 540 P.2d at 129), that rationale is contrary to a previous decision of this court. In *Porter v. Empire Fire & Marine Insurance Company*, 106 Ariz. 274, 475 P.2d 258 (1970), we held that even though it was known that a negligent driver was actually "insured," he would be considered "uninsured" for the purposes of A.R.S. § 20–259.- 01 where the full minimum amount required by the statute was "unavailable" to the victim because the policy limits were to be divided among several victims. If a tortfeasor *known to be insured* can be considered as "uninsured" in order to achieve the objectives of the statute, it requires no great leap of the imagination to conclude

that an unidentified driver who might be either insured or uninsured must be considered as "uninsured" when the absence of such identification makes the protection required by the statute "unavailable" to the victim. It is "absurd" that an insured driver can be considered "uninsured" where necessary to achieve the legislative purpose, but an "unidentified" driver must be presumed "insured" despite the frustration of the legislative intent to provide a source of compensation for each person entitled to recover damages.

The purpose of the physical contact requirement to hit-and-run coverage is to protect insurance carriers from the danger of paying fraudulent claims. No doubt the insurer does need protection from fraudulent claims, but it is extremely doubtful that the physical contact requirement has much efficacy in that regard. Someone dishonest and sophisticated enough to invent a phantom vehicle in order to support a claim under the hit-and-run provisions of his uninsured motorist coverage will hardly be deterred by the necessity of having to use a hammer or screwdriver to create some evidence of physical contact on his car. A. Widiss, *A Guide to Uninsured Motorist Coverage* § 2.41, pp. 141–43 (Supp.1981).

I have no quarrel with the idea that some standard of corroboration is needed to support the claimant's contention that there was a hit-and-run motorist. That corroboration is best provided by requiring the claimant to convince the finder of fact (whether it be judge, jury or arbitrator) that the accident was caused by the negligence of some other driver who then disappeared.

Summing up his comments on the hit-and-run problem, Professor Widiss makes the following observations:

> ... [D]uring the past five years, courts in an increasing number of states have concluded (1) that even though there is no specific reference to accidents caused by unknown motorists in the uninsured motorist statute, the statutory mandate contemplates coverage for such accidents, and (2) that any provisions in the insur-

ance contracts restricting coverage for accidents caused by unknown motorists to instances where there was a "physical contact" is in derogation of the protective purposes of the statute.

*Id.* at 160.

> ... [A] general reconsideration of the appropriateness of the physical contact requirement also now seems warranted. This is not to suggest that the proverbial "flood gates" to claims should be opened. So long as the coverage is keyed to the fault of an unknown motorist, there certainly needs to be some means for assuring that insurance companies are provided adequate evidence in support of the alleged negligence of the unidentified driver. The claimant should undoubtedly bear the initial burden of proof [that there was another vehicle], and the insurance company should certainly be assured the right to raise fraud or collusion as a defense to any claim.

> The coverage for accidents involving unknown motorists has been framed in terms which allow recoveries for injuries that occur in accidents where there is some evidence of a minute contact, but no evidence from impartial witnesses, *and* denied coverage where there is no contact even though there may be many impartial witnesses. Maintaining this approach to the coverage seems likely to invite continuing dissatisfaction with and disputes over the scope of protection afforded to insureds that will almost surely lead not only to appellate litigation, but ultimately legislative consideration of this problem.

*Id.* at 162.

As noted above, we have already had such legislative consideration in Arizona. In view of the legislative intent to cover "unknown vehicles" as a subdivision of uninsured motor vehicles, and the illogical consequences which result from the interpretation given the statute in *Balestrieri,* I would overrule that decision and hold that the physical contact requirement for coverage for injuries resulting from the negligence of a hit-and-run driver is in deroga-

tion of the uninsured motorist statute and is therefore void. Substantial authority exists for this position. A growing number of jurisdictions now hold that a policy requirement of "physical contact" is void as against public policy even where, as in Arizona, the uninsured motorist statute speaks only in terms of "uninsured" and not unknown motor vehicles. *See State Farm & Casualty Co. v. Lambert,* 291 Ala. 645, 285 So.2d 917 (1973); *Farmers Insurance Exchange v. McDermott,* 34 Colo.App. 305, 527 P.2d 918 (1974); *Brown v. Progressive Mutual Insurance Co.,* 249 So.2d 429 (Fla.1971); *DeMello v. First Insurance Co. of Hawaii, Ltd.,* 55 Hawaii 519, 523 P.2d 304 (1974); *Simpson v. Farmers Ins. Co., Inc.,* 225 Kan. 508, 592 P.2d 445 (1979); *Webb v. United Services Automobile Ass'n,* 227 Pa.Super. 508, 323 A.2d 737 (1974).