985 P.2d 507

**FARMERS INSURANCE COMPANY OF ARIZONA, an Arizona corporation, Plaintiff/Appellee,**

v.

**Marcus M. YOUNG, a single person, Defendant/Appellant.**

**Marcus M. Young, a single person, Counterclaimant/Appellant,**

v.

**Farmers Insurance Company of Arizona, an Arizona corporation; Farmers Insurance Group Corporation, a California corporation, Counterdefendants/Appellees.**

No. 2 CA–CV 97–0213.

Court of Appeals of Arizona, Division 2, Department B.

July 7, 1998.

Slutes, Sakrison, Grant, Hill & Rubin, P.C. By Philip H. Grant, Tucson, for Plaintiff/Counterdefendants/Appellees.

## OPINION

HOWARD, Judge.

¶ 1 Appellant Marcus Young appeals from the judgment entered in favor of appellee Farmers Insurance Company determining, on Farmers' declaratory judgment action, that Young had no right to recover under Farmers' policy and, on Young's third-party bad faith counterclaim, that Farmers had not acted in bad faith. We affirm.

### Background

¶ 2 On May 21, 1994, Zachariah Purdy, a seventeen-year-old driving a 1971 Buick which was titled in his father's name, attempted to pass a truck in a no-passing zone and collided with a vehicle driven by Young, who was injured in the accident. Purdy's Buick was insured by Farmers ("Purdy's policy"). In addition, at the time of the accident, Purdy was residing with his grandparents, Carl and Evelyn Obert, and was an "insured person" under their Farmers motor vehicle insurance policy ("the Oberts' policy").

¶ 3 Young made claims under the liability provisions of both policies and then sued Purdy and his parents. Young was paid the $50,000 limits under Purdy's policy but was denied coverage under the Oberts' policy, because, according to Farmers, in addition to other defenses, the policy excluded coverage for an insured driving a vehicle that was not explicitly identified in the policy and that was "owned by or furnished or available for regular use" of the insured. Young resolved the underlying personal injury action by obtaining a stipulated judgment against Purdy and his parents and accepting an assignment of their bad faith claim against Farmers in exchange for a covenant not to enforce the judgment against them personally.

¶ 4 Farmers brought this declaratory judgment action, claiming there was no coverage under the Oberts' policy. Young filed a counterclaim alleging third-paty bad faith in Farmers' refusal to provide coverage to

Law Office of Drue A. Morgan–Birch By Drue A. Morgan–Birch, Tucson, for Defendant/Counterclaimant/Appellant.

Purdy under that policy. After a bench trial, the court concluded that the accident was not covered under the Oberts' policy, that the exclusion was valid, and that, even if there had been coverage, Farmers had not acted in bad faith.

### Coverage

■ ¶ 5 The Oberts' policy explicitly covers the Oberts' two vehicles and states that "[Farmers] will pay **damages** for which any **insured person** is legally liable because of **bodily injury** to any person and/or **property damage** arising out of the ownership, maintenance or use of a **private passenger car**, a **utility car**, or a **utility trailer**." An exclusion in the policy, however, states that "[t]his coverage does not apply to: ... **Bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle other than **your insured car**, which is owned by or furnished or available for regular use by you or a **family member**." The policy defines an "insured car" as "[t]he vehicle described in the Declarations of this policy...." This "other vehicle" exclusion applies to Purdy's Buick, which was not described in the declarations of the Oberts' policy and which Young concedes was either owned by Purdy or available for his regular use. Young claims, however,that this exclusion is void because coverage is mandated by Arizona's Vehicle Insurance and Financial Responsibility Act (the Financial Responsibility Act), A.R.S. §§ 28–4001 through 28–4153,[1] and because it violates public policy. We review these issues of statutory interpretation and application de novo. *Schwarz v. City of Glendale*, 190 Ariz. 508, 950 P.2d 167 (App.1997).

### A.R.S. § 28–4009(B)

¶ 6 We first address Young's contention that coverage was required by § 28–4009(B), which provides that "[a]n *operator's* motor vehicle liability policy shall insure the person named as insured in the policy against loss from the liability imposed on the person by

law for damages arising out of the use by the person of a motor vehicle not owned by the person...." (Emphasis added.) Farmers counters that the Oberts' policy is an "owner's" policy pursuant to § 28–4009(A) rather than an "operator's" policy subject to subsection (B). Young claimed at oral argument without explanation that it was unclear whether the policy was an owner's or operator's policy, but that it should therefore be construed as an operator's policy.

■ ¶ 7 Owner's policies and operator's policies are separate and distinct. *Heard v. Farmers Ins. Exchange Co.*, 17 Ariz.App. 193, 496 P.2d 619 (1972). *See also* § 28–4001(4) ("[m]otor vehicle liability policy" defined as "an owner's or an operator's policy"); *Gilpin v. Northwestern Sec. Ins. Co.*, 447 F.2d 1347, 1349 (9th Cir.1971) ("Arizona statutes differentiate between an owner's and an operator's policy."). An owner's policy insures the owner of a specified vehicle against liability arising out of its use, while an operator's policy insures the person in the act of operating any nonowned motor vehicle. A.R.S. § 28–4009(B); *see also Reserve Ins. Co. v. Staats*, 9 Ariz.App. 410, 453 P.2d 239 (1969). *Compare* § 28–4009(A)(1) (requiring an owner's policy to "designate by explicit description or by appropriate reference all motor vehicles" covered) *with* § 28–4009(B) (requiring coverage for "the person named as insured"). Oberts' policy specifically covers their two vehicles and is therefore an owner's policy. That the policy includes coverage for nonowned vehicles that are not "furnished or available for regular use" does not convert it into an operator's policy. *Civil Service Employees Ins. Co. v. Roberts*, 10 Ariz.App.512, 460 P.2d 48 (1969); *see also Gilpin*. Subsection (B)does not, therefore, apply.

### A.R.S. § 28–4009(C)(4)

¶ 8 Young also claims coverage was required because the "other vehicle" exclusion is not one of the liability coverage exclusions permitted by § 28–4009(C)(4).[2] Whether the

---

**1.** We refer to the current numbering of the statutes. Any differences in language between the current statutes and those in effect at the time the accident occurred do not change our legal conclusions.

**2.** This subsection allows exclusions for employment-related liability, intentional torts, and other circumstances not relevant here.

"other vehicle" exclusion is permissible under subsection (C)(4) is irrelevant, however, if coverage under the Oberts' policy was not required by subsections (A) or (B) in the first instance.[3] Once an insurer complies with the minimum requirements of the Financial Responsibility Act, as the Oberts' policy did, it may contract to provide, and correspondingly limit, additional coverage. *See* § 28–4009(D) (policy that grants required coverage may also grant coverage in excess of or in addition to required coverage; the excess or additional coverage is not subject to Financial Responsibility Act); *Arceneaux v. State Farm Mut. Auto. Ins. Co.*, 113 Ariz. 216, 217, 550 P.2d 87, 88 (1976) ("In matters not mandated by law (or the public policy of the state) the parties should be permitted to make their own contractual arrangements."); *Luehrs v. Utah Home Fire Ins. Co.*, 450 F.2d 452 (9th Cir.1971).

¶ 9 Having concluded that subsection (B) does not apply to the Oberts' policy, we now consider whether subsection (A) requires coverage of Purdy's vehicle under the Oberts' policy and thereby limits the allowable policy exclusions to those permitted under subsection (C)(4). Subsection (A) provides:

> An owner's motor vehicle liability policy shall comply with the following:
> 1. The policy shall designate by explicit description or by appropriate reference *all motor vehicles* for which coverage is granted....
> 2. The policy shall insure the person named in the policy as the insured and any other person, as insured, using *the* motor vehicle or motor vehicles with the express or implied permission of the named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of *the* motor vehicle or motor vehicles....

(Emphasis added.) Purdy's vehicle was not specifically described or referred to in the Oberts' policy. Analyzing a similar Arizona owner's insurance policy that provided additional coverage while the named insured was driving vehicles other than those specified in the policy, the Ninth Circuit Court of Appeals in *Luehrs* concluded that:

> Had [the insured's] policy been an "operator's policy of liability insurance," "drive other cars" coverage would have been required under A.R.S. § 28–[4009(B) ]. But, as stated above, [the insurance company] had issued [the insured] an "owner's policy." A "drive other cars" clause is not required by Arizona statute in an owner's policy.
>
> It follows that [the insured's] "drive other cars" coverage was voluntary. When coverage is voluntary, it may be limited or excluded in Arizona.

450 F.2d at 455–56 (citations and footnotes omitted).

¶ 10 To the extent the Oberts' policy exceeded the requirements of subsection (A) and covered "insured persons" driving vehicles that were not explicitly described in the policy, that coverage was excess or additional coverage that Farmers could limit.[4] Coverage of Purdy's vehicle under the Oberts' policy, therefore, was not required by subsection (A). Because neither subsection (A) nor (B) requires coverage of Purdy's vehicle under the Oberts' policy, the fact that subsection (C)(4) does not include an "other vehicle" exclusion does not mandate coverage.

### *A.R.S. § 28–4009(C)(5)(a)*

¶ 11 Young next claims that § 28–4009(C)(5)(a), which states that "[t]he liability of the insurance carrier with respect to *the insurance required by this chapter* becomes absolute when injury or damage *covered* by the motor vehicle liability policy occurs" (em-

---

3. We note, moreover, that the "other vehicle" exclusion has previously been upheld against other attacks. *See Farmers Ins. Co. of Arizona v. Zumstein*, 138 Ariz. 469, 675 P.2d 729 (App. 1983); *Dairyland Ins. Co. v. Beekman*, 118 Ariz. 294, 576 P.2d 153 (App.1978); *Keplinger v.Mid-Century Ins. Co.*, 115 Ariz. 387, 565 P.2d 893 (App.1977).

4. We express no opinion as to whether an insurer may exclude coverage for temporary substitute vehicles, which could cause a gap in liability coverage.

phasis added), prevents Farmers from denying him coverage. That subsection does not apply when, as here, coverage under the Oberts' policy never existed. *Ogden v. United States Fidelity & Guar. Co.*, 188 Ariz. 132, 933 P.2d 1200 (App.1996). Furthermore, Young's reliance on *Midland Risk Management Co. v. Watford*, 179 Ariz. 168, 876 P.2d 1203 (App.1994), in support of this argument is misplaced. *Midland Risk* involved a vehicle specifically identified and insured under a motor vehicle liability policy, coverage of which was required by subsection (A).[5] Purdy's vehicle was not specifically identified under the Oberts' policy and was covered under Purdy's policy. Subsection (C)(5)(a), therefore, does not mandate coverage under the Oberts' policy.

### Public Policy

¶ 12 Young finally argues that allowing the exclusion would violate the public policy of the state. The legislature enunciated the public policy by its enactment of the Financial Responsibility Act "in response to social and economic problems arising from the increasing casualty rate ·on Arizona streets and highways. Its primary purpose is the protection of the traveling public from financial hardship resulting from the operation of motor vehicles by financially irresponsible persons." *Midland*, 179 Ariz. at 171–72, 876 P.2d at 1206–07 (citations omitted). "The best indication of legislatively enacted public policy and legislative intent is the language of the enactment itself." *Arizona Property and Cas. Ins. Guar. Fund v. Ueki*, 150 Ariz. 451, 456, 724 P.2d 70, 75 (App.1986). *See also Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 710 P.2d 1025 (1985).

¶ 13 Subsection (A) specifically requires the owner's policy to designate or refer to the covered vehicles. Extending liability coverage to any vehicle driven by an insured contradicts this statutory requirement and is, therefore, not within the public policy expressed in subsection (A). In addition, subsection (A) only requires that each vehicle be insured against liability for bodily injury

damages in the amount of $15,000 per person and $30,000 per accident. § 28–4009(A)(2)(a) and (b). Purdy's policy exceeded this statutory minimum and insured his vehicle against liability in the amount of $50,000 per person and $100,000 per accident. Young, in fact, received the $50,000 policy limits under Purdy's policy. If, as here, vehicle owners comply with the statutory insurance requirements, which include coverage of permissive users of the vehicle, the "other vehicle" exclusion will not result in the driving of an uninsured automobile. The situation presented here demonstrates no need for us to invalidate the exclusion to uphold the statute's purpose.

¶ 14 Young contended at oral argument, however, that the "other vehicle" exclusion could create a gap in coverage if the tortfeasor did not "fortuitously" have liability insurance. The truly fortuitous circumstance would be Purdy's status as an insured under the Oberts' policy. Liability insurance is not fortuitous, but rather is required by A.R.S. § 28–4135. In Young's hypothetical, any gap in the statutorily required coverage is caused by the tortfeasor's failure to comply with the statute, not by the "other vehicle" exclusion. As in other uninsured motorist situations, the legislature has provided for uninsured motorist coverage to bridge the gap when a tortfeasor fails to comply with § 28–4135. *See Anderson v. State Farm Mut. Auto. Ins. Co.*, 133 Ariz. 464, 469, 652 P.2d 537, 542 (1982) (uninsured motorist statute enacted to " 'close the gap' in the Financial Responsibility Act by protecting those who are injured by the negligence of financially irresponsible motorists"). Because the legislature has provided for protection in these situations, we need not judicially create any additional unwarranted protection.

¶ 15 We also believe that other factors weigh against invalidating the "other vehicle" exclusion. Farmers simply excluded excess coverage under the Oberts' policy for a vehicle that the Oberts did not own, did not drive, did not explicitly insure, and for which they paid no insurance premiums. In

---

**5.** The holding in *Midland* also has been restricted to the minimum statutory requirements, which Purdy's policy provided. *Prudential v. Estate of*

*Rojo–Pacheco*, 192 Ariz. 139, 962 P.2d 213 (Ct. App.1997).

*Grange Insurance Association v. Mac-Kenzie,* 37 Wash.App. 703, 683 P.2d 221, 223 (Wash.App.1984), the Washington Court of Appeals held that the "other vehicle" exclusion

> serv[es] the legitimate purpose of preventing an insured from receiving coverage on all household cars or another uninsured car of the insured by merely purchasing a single policy.... Broad exclusions of coverage are permissible when the nature of the insurer's risk is altered by factors not contemplated in the computation of premiums....

(Citations omitted.)[6] Invalidating the "other vehicle" exclusion would greatly alter the risks which insurers contemplate in issuing policies and would allow an insured to receive coverage on a vehicle without paying a premium for it. *See Farmers Ins. Co. of Arizona v. Zumstein,* 138 Ariz. 469, 474, 675 P.2d 729, 734 (App.1983) (habitual use of vehicle not covered by policy "would increase the risk [to the insured] and should thus increase the premium"). We do not believe the Financial Responsibility Act demonstrates any legislative intent to require that every insurer provide minimum liability coverage in every accident situation even though no premium has been paid for the coverage.

¶ 16 Finally, in support of his claim that the "other vehicle" exclusion violates public policy when applied to liability coverage, Young relies on *Calvert v. Farmers Insurance Co. of Arizona,* 144 Ariz. 291, 697 P.2d 684 (1985), and *State Farm Mutual Automobile Insurance Co. v. Duran,* 163 Ariz. 1, 785 P.2d 570 (1989), in which the supreme court held that the "other vehicle" exclusion is void as against public policy when applied to uninsured motorist (UM) and underinsured motorist (UIM) coverages under A.R.S. § 20–259.01. Uninsured and underinsured coverages, however, are first-party insurance and involve different considerations than third-party liability coverage. As the supreme court stated in *Employers Mutual Casualty Co. v. McKeon,* 159 Ariz. 111, 114, 765 P.2d 513, 516 (1988):

> [W]hile both A.R.S. § 28–[4009] and A.R.S. § 20–259.01 deal with aspects of Arizona motor vehicle liability policies, the statutes approach the subject from different perspectives. [Section 28–4009] centers on liability coverage—protection of those injured by the insured's negligence; the later [sic] statute concerns uninsured and now, also, underinsured benefits—protection of the insured. The laws were enacted at different times to protect different interests. Thus, an exclusion under liability protection does not require a similar result for uninsured motorist protection.

¶ 17 Liability insurance under § 28–4009(A) covers "damages arising out of the ownership, maintenance or use of *the* motor vehicle." (Emphasis added.) Uninsured and underinsured motorist coverages under § 20–259.01, however, insure people "not only when occupying an insured vehicle, but also when in another automobile, when on foot, when on a bicycle or when sitting on a porch." *Calvert,* 144 Ariz. at 296, 697 P.2d at 689 (footnote omitted). *See also* § 20–259.01 (UM/UIM insurance "covers all persons insured under the policy"). The rationale supporting the conclusion that the "other vehicle" exclusion violates the public policy behind the UM/UIM statute, therefore, does not apply in the liability insurance context. Uninsured and underinsured motorist coverages are portable; liability insurance required by § 28–4009(A) is not.

¶ 18 Accordingly, we hold that the "other vehicle" exclusion in the Oberts' policy is valid and does not violate Arizona's public

---

**6.** *See also* 6B John Alan Appleman & Jean Appleman, *Insurance Law & Practice* § 4291 at 27 (Supp.1998) (insurer's undertaking to pay under an automobile liability policy "is directly related to ... one of the vehicles specifically mentioned in the policy ... for which a specific premium was charged"); 7 Am.Jur.2d *Automobile Insurance* § 238 at 192 (1980) (the intent of the exclusion is "to prevent a situation in which members of one family or household may have two or more automobiles which are used interchangeably but with only one particular automobile insured"); W.R. Habeeb, Annotation, *Exclusion from "drive other cars" provision of automobile liability insurance policy of other automobile owned, hired, or regularly used by insured or member of his household,* 86 A.L.R.2d 937, 940 (1962) (purpose of exclusion is "to exclude the habitual use of other cars, which would increase the risk on the insurance company without a corresponding increase in the premium").

policy. The trial court, therefore, correctly held that the exclusion was enforceable and that no coverage existed.

### Bad Faith

¶ 19 Young also argues that Farmers acted in bad faith by failing to investigate the claim and by "searching only for a justification for denial of coverage instead of a basis for finding coverage." The trial court issued findings of fact and conclusions of law pursuant to Rule 52(a), Ariz. R. Civ. P., 16 A.R.S., which included specific findings that Farmers' actions "were reasonable under the circumstances" and did not constitute bad faith. We will not set aside the trial court's findings of fact unless they are clearly erroneous, "giving due regard to the opportunity of the trial court to view evidence and weigh the credibility of witnesses." *Lee Dev. Co. v. Papp*, 166 Ariz. 471, 475–76, 803 P.2d 464, 468–69 (App.1990); see also Ariz. R. Civ. P. 52(a).

¶ 20 A claim of bad faith is premised on the factual issue of whether the insurer acted reasonably under the circumstances. *Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 838 P.2d 1265 (1992); *Trus Joist Corp. v. Safeco Ins. Co. of America*, 153 Ariz. 95, 735 P.2d 125 (App.1986). "Whether an action amounts to bad faith depends upon whether the insurer failed to honor a claim without a reasonable basis for doing so." *Deese*, 172 Ariz. at 507, 838 P.2d at 1268, *quoting Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 538, 647 P.2d 1127, 1136 (1982). Because we conclude the record supports the trial court's finding that Farmers reasonably denied coverage under the valid "other vehicle" exclusion, the trial court's findings were not clearly erroneous, *Lee Development*; therefore, Young's bad faith claim fails. *See Trus Joist*, 153 Ariz. at 104, 735 P.2d at 134 ("Where an insurer acts reasonably,there can be no bad faith.").

¶ 21 The judgment is affirmed. Farmers' request for attorney's fees on appeal is granted, upon its compliance with Rule 21, Ariz. R. Civ.App. P., 17B A.R.S.

CONCURRING: PHILIP G. ESPINOSA, Judge, and J. WILLIAM BRAMMER, JR., Judge.