132 P.3d 298

**PROGRESSIVE CLASSIC INSURANCE COMPANY, a foreign insurer, Plaintiff/Counter–Defendant/Appellant,**

v.

**Peter F. BLAUD and Jane Doe Blaud, husband and wife, Defendants/Counter–Plaintiffs/Appellees.**

No. 1 CA–CV 04–0589.

Court of Appeals of Arizona, Division 1, Department D.

April 11, 2006.

Kunz Plitt Hyland Demlong & Kleifield PC By Steven Plitt, Daniel Maldonado, Christie L. Kriegsfeld, Phoenix, Attorneys for Appellant.

Levenbaum & Cohen By Geoffrey M. Trachtenberg, Phoenix, Attorneys for Appellee.

## OPINION

SNOW, Judge.

¶ 1 Progressive Classic Insurance Company appeals the trial court's grant of summary judgment to Peter F. Blaud determining that Blaud's uninsured motorist insurance issued by Progressive provides coverage for Blaud's claim. For the following reasons, we affirm that part of the trial court's judgment that determines that Blaud complied with the requirements of Arizona's Uninsured Motorist Act ("UMA"), Arizona Revised Statutes ("A.R.S.") section 20–259.01 (Supp.2005), but reverse the trial court's determination that, as a matter of law, Blaud's uninsured motorist coverage provides coverage for Blaud's claim. We remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Blaud was traveling on his motorcycle on Interstate 10 in Phoenix when he hit a large piece of truck tire. According to Blaud, the tire tread was airborne when it hit his motorcycle and was either detached from "the vehicle in front of him or projected into his path by an unknown vehicle." Blaud was thrown from his motorcycle, fracturing bones in his right shoulder. James Botsko, an expert in accident reconstruction, confirmed Blaud's testimony, stating that the contact marks on the motorcycle confirmed that "the tire casing was airborne, at least partially, when the collision occurred."

¶ 3 While Progressive acknowledges that Blaud hit a tire tread, it asserts that the tire tread was not projected into Blaud. Because it was a truck tire, Progressive also asserts that it did not come from the automobile in front of Blaud. Rather, Progressive asserts, Blaud merely ran over a pre-existing piece of road debris. Progressive cites to Dale Rhoads' witness statement in which he indicates that "the motorcyclist ran over a large piece of truck tire" and "then lost control and crashed, sliding approximately 50 yards." Further, in a diagram, Rhoads showed that his vehicle was in the lane next to Blaud's motorcycle and that another vehicle was in the lane just ahead of Blaud, with the piece of tire between the other vehicle and Blaud.

¶ 4 Blaud made a claim for his injuries under the uninsured motorist ("UM") provision of his Progressive policy. Progressive denied Blaud's claim and filed a declaratory judgment action, seeking a determination that Blaud's policy did not provide UM coverage for damages resulting from his collision with the tire tread. Blaud filed a counterclaim, seeking a determination that Progressive must provide UM coverage for the accident. He then moved for summary judgment pursuant to the UMA and the terms of his Progressive policy.

¶ 5 The trial court granted Blaud's motion for summary judgment and denied Progressive's cross-motion. The court reasoned that Blaud's injuries arose " 'out of the ownership, maintenance or use' of an unidentified motor vehicle," whether the tire tread was airborne when it hit Blaud's motorcycle or whether Blaud hit a stationary tire tread on the road. The court thus entered judgment in favor of Blaud, ordering that Blaud's UM policy provided coverage for the incident and awarding Blaud $6000 in attorneys' fees and $166.10 in costs. Progressive timely appeals from the judgment. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

¶ 6 On appeal, Progressive argues that the trial court erred in granting Blaud's motion for summary judgment in two respects. First, Progressive argues the trial court erred in determining that Blaud satisfied the requirements of the UMA. Second, it alleges that the trial court erred in concluding that Blaud's "injuries resulting from the collision with the tire tread constituted damages

caused by or arising out of the ownership, maintenance, or use of an uninsured motor vehicle."

## I. The Uninsured Motorist Act

¶ 7 The first issue on appeal is whether Blaud complied with subsection (M) of the UMA, A.R.S. § 20–259.01(M), in making his claim. Subsection (M) specifies that to make a claim against uninsured motor vehicle coverage for an accident in which the claimant alleges an unidentified vehicle was the cause, the claimant must either demonstrate physical contact between the claimant's vehicle and the unidentified vehicle, or the claimant must "submit corroboration of his version of the accident." *Scruggs v. State Farm Mut. Auto. Ins. Co.*, 204 Ariz. 244, 245, ¶ 1, 62 P.3d 989, 990 (App.2003).

¶ 8 In the instant case, Progressive argues that Blaud's claim does not comply with the requirements of bringing a claim under the UMA. Progressive first argues that there was no physical contact between Blaud's vehicle and another motor vehicle. Thus, Blaud was obliged to provide adequate corroboration of his claim. Progressive argues that Blaud has not done so, and therefore there is no coverage under the UMA. We will examine these assertions in turn.

### A. Physical Contact

¶ 9 The trial court determined that whether the tire tread was airborne when it hit Blaud's motorcycle or whether Blaud hit a stationary tire tread on the road, the "physical contact" requirement of the UMA is satisfied. We do not necessarily agree. The "physical contact" analysis depends upon whether the truck tire tread was projected into Blaud by another vehicle or whether Blaud ran over an unidentified tread already on the road.

### 1. If the Tire Tread Was Projected into Blaud by Another Vehicle, the "Physical Contact" Requirement Is Satisfied.

¶ 10 The Arizona Supreme Court has previously examined the application of "physical

contact" for purposes of UM coverage. In *Anderson v. State Farm Mut. Auto. Ins. Co.*, 133 Ariz. 464, 465, 652 P.2d 537, 538 (1982), the insured was rear-ended by a van while stopped at a traffic light. The van had been struck and pushed into the insured's car by a third vehicle. This third vehicle never came in direct contact with the insured's car and left the scene. *Id.* The court concluded that "the injuries were the result of physical (albeit indirect) contact with the hit-and-run vehicle," and that such indirect physical contact is sufficient to satisfy the physical contact requirement in a UM policy. *Id.* at 467, 652 P.2d at 540. In reaching its conclusion, the court explained that the requirement of physical contact was designed to prevent fraudulent claims, and that the "trend is to construe 'physical contact' broadly in order to effectuate the purposes of uninsured motorist protection." *Id.* (citation omitted). The court further explained, "[w]here force has been exerted from an unidentified vehicle through an intermediate object and where this fact may be verified in such a way to provide safeguards against fraud, we find that the physical contact requirement of the policy has been satisfied." *Id.* (citation omitted).

¶ 11 The court's explanations and findings in *Anderson* are consistent with a finding that the physical contact requirement is satisfied where an intermediate object, here the tire tread, is projected into the claimant by another motor vehicle. Here, if the tire tread was projected into Blaud from another motor vehicle, then Blaud has satisfied the physical contact requirement, and he may bring a UM claim under his Progressive policy without providing other corroborating evidence.[1] *Cf. S. Farm Bureau Cas. Ins. Co. v. Brewer*, 507 So.2d 369, 371 (Miss.1987) ("An object propelled by one vehicle into another is sufficient to satisfy the physical contact requirement for recovery under the uninsured motorist provision for a hit-and-run driver."); *Theis v. Midwest Sec. Ins. Co.*, 232 Wis.2d 749, 606 N.W.2d 162, 165 (2000) (held that Wisconsin Statutes § 632.32(4) re-

---

1. Progressive does not contest that evidence establishes that Blaud's motorcycle actually collid-

ed with a tire tread.

quired that UM clauses of insurance policies provide coverage "when a detached piece of an unidentified motor vehicle is propelled into the insured's motor vehicle by an unidentified motor vehicle"); *Ill. Nat'l Ins. Co. v. Palmer,* 116 Ill.App.3d 1067, 72 Ill.Dec. 454, 452 N.E.2d 707, 707–08 (1983) (physical contact occurred where insured vehicle was struck by lug nut propelled from unidentified vehicle and claimant presented evidence to establish a causal connection between the vehicles).

## 2. If Blaud Ran Over the Tire Tread, There Are Issues of Fact as to Whether the "Physical Contact" Requirement Is Satisfied.

¶ 12 If, however, as Progressive argues, Blaud ran over a stationary piece of tire tread instead of having it projected into him by another vehicle, a different analysis is required. Progressive, citing *Gardner v. Aetna Cas. & Sur. Co.,* 114 Ariz. 123, 124, 559 P.2d 679, 680 (App.1976), argues that running over a stationary tire tread is not sufficient to satisfy the "physical contact" requirement of the statute because the physical contact, even if it is indirect physical contact, must be between the insured's vehicle and the unidentified motor vehicle causing the accident. Contact between the insured's motor vehicle and debris dropped by the unidentified vehicle is insufficient.

¶ 13 In *Gardner,* plaintiffs were injured when they collided with a bale of wire that had fallen from an unidentified flat bed truck. 114 Ariz. at 123, 559 P.2d at 679. They made an uninsured motorist claim. In affirming the summary judgment entered in favor of the insurer we noted that plaintiff's policy, similarly to the statute here, required that there be physical contact between the vehicle that caused the accident and the insured's vehicle. *Id.* at 124, 559 P.2d at 680. Contact between the bale of wire that fell

from the unidentified vehicle and plaintiff's vehicle was insufficient to satisfy the physical contact requirement because it was indirect contact. *Id.* We held that indirect contact is insufficient to establish "physical contact" where it did not "at least originate in vehicular collision." *Id.* (citing *Smith v. Great Am. Ins. Co.,* 29 N.Y.2d 116, 324 N.Y.S.2d 15, 272 N.E.2d 528, 529 (1971)); [2] *see also, Torstenson v. Doe,* 257 Ga.App. 389, 571 S.E.2d 432, 434 (2002) ("van was hit not by an 'integral part' of the truck, but by cargo carried by the truck").

¶ 14 Because the statute here requires other corroboration in the absence of physical contact between the unidentified vehicle and the insured's vehicle, if a tire tread was not an integral part of a vehicle, *Gardner's* logic might be applied to require independent corroboration here. But, unlike a bale of wire, a tire constitutes an integral part of a motor vehicle. Other states have held that when an insured vehicle collides with parts of a vehicle that have fallen from the vehicle while in operation, the physical contact requirement is satisfied. *See, e.g., State Farm Fire & Cas. Co. v. Guest,* 203 Ga.App. 711, 417 S.E.2d 419, 421–22 (1992) (tire assembly on highway was integral part of motor vehicle sufficient to meet physical contact requirement); *Adams v. Mr. Zajac, L.C.L.,* 110 Mich.App. 522, 313 N.W.2d 347, 349 (1981) ("the 'physical contact' takes place when a vehicle or an integral part of it comes into physical contact with another vehicle. Whether the part is still attached or comes to rest after being detached from the vehicle makes little difference in principle."). Thus, collision with a tire tread might constitute physical contact with the motor vehicle.

¶ 15 Progressive further points out, however, that a tire tread is only road debris that could have come from any source. The burden of proof is on Blaud to establish that the

---

**2.** *Anderson* is presumably reconcilable with this result since the indirect contact in *Anderson* originated in a "vehicular collision." Both *Anderson* and *Gardner* precede the UMA, but they interpret policy provisions requiring physical contact with the unidentified vehicle as opposed to the current statutory requirements. Thus, while in both *Anderson* and *Gardner,* physical contact with the unidentified vehicle was a prerequisite to cover-

age, here it only avoids the necessity for Blaud to provide corroboration of his version of events. Pursuant to the statute, if Blaud cannot establish physical contact with the unidentified vehicle, Blaud may still make a claim so long as he provides corroboration that the accident occurred as he claims and involved an unidentified motor vehicle.

tire tread actually came from the operation of another unidentified vehicle. And, unless he does so, he has not sufficiently established physical contact with another motor vehicle by running over a tire tread. Progressive argues that other states impose such a requirement. Progressive points as an example to *Yutkin v. U.S. Fid. & Guar. Co.,* where the court noted:

> [T]here was no direct causal connection between any vehicle and plaintiffs' vehicle. It is unknown whether another vehicle even existed or, for example, whether the [tire fragment] lying in the road had fallen from a garbage truck weeks earlier. There is simply no evidence of when or how the piece of debris came to rest in the road.

146 Ill.App.3d 953, 100 Ill.Dec. 493, 497 N.E.2d 471, 473 (1986); *see also Blankenbaker v. Great Cent. Ins. Co.,* 151 Ind.App. 693, 281 N.E.2d 496, 501 (1972) (no recovery where plaintiffs were injured when insured's camper-bus struck a truck tire and rim on the roadway because plaintiffs failed to provide evidence to establish a causal connection between a motor vehicle and the tire and rim assembly); *Allstate Ins. Co. v. Killakey,* 78 N.Y.2d 325, 574 N.Y.S.2d 927, 929, 580 N.E.2d 399 (1991) ("claimant must prove that the detached part, in an unbroken chain of events, caused the accident").

¶ 16 In this case, the trial court apparently determined that contact with a tire tread constituted contact with another unidentified vehicle as a matter of law. We disagree. As Progressive argues and as the *Yutkin* Court noted, a tire tread could have fallen out of a dump truck or other transport vehicle. In such a case it would no more be part of the unidentified vehicle from which it fell than the bale of wire into which the Gardners unfortunately collided was part of the flatbed truck from which it fell. A determination by the fact finder that a tire tread did not separate from a tire on an operating motor vehicle would prevent a finding that there was physical contact between the unidentified vehicle and Blaud's vehicle. Nevertheless, assuming that Blaud could otherwise offer corroboration of his version of the accident, such a finding would not preclude a determination by the fact finder that the tire nevertheless fell from an unidentified motor vehicle and thus the accident arose "out of the ... use of an uninsured motor vehicle" as Blaud's policy requires.

¶ 17 We also disagree with Progressive's argument that Blaud provided no evidence from which a trier of fact could draw an inference that the tire tread came from an unidentified vehicle. Blaud presented evidence, which Progressive does not contest, that he collided with a tire tread on the highway. We believe, as does the *Guest* court, that "a reasonable inference [may] be drawn from [Blaud's] collision with a tire [tread]—an integral part of a motor vehicle ... that the tire [tread] was ... attached to an unknown vehicle from which it fell and left in the roadway by the driver of that unknown vehicle." *Guest,* 417 S.E.2d at 422 (trier of fact could conclude physical contact requirement was satisfied when Guest hit a tire assembly lying on the highway). As the *Guest* court noted:

> That inference, as well as any other inference, is circumstantial evidence which the [fact finder] must consider along with all of the other evidence to be weighed in its determination of where the preponderance of the evidence lies on the issue of whether an unknown motor vehicle caused the accident.

*Id.* at 422. The inference is permissive, not mandatory, and thus the finder of fact is free to either adopt or ignore it. 29 Am.Jur.2d. *Evidence* § 182 (2005). Progressive is free to present evidence that the tire tread that Blaud hit did not fall from the tire of an operating motor vehicle, and thus the physical contact requirement is not satisfied. Nevertheless, because Progressive does not contest that Blaud hit a tire tread on Interstate 10, the available factual inference prevents Progressive from determining on its own that Blaud has not complied with the physical contact requirements of subsection (M) of the UMA. Further, should the fact finder accept the inference that the tire tread came from the operation of an unidentified motor vehicle, the less exacting requirement of Blaud's policy that the accident arose "out

of the ... use of an uninsured motor vehicle" would also be satisfied.

### B. Corroboration

■ ¶ 18 Even if, as Progressive argues, Blaud has not met the physical contact requirement of the UMA, Blaud has provided the corroboration required by statute. Blaud's version of events was corroborated by Botsko's expert testimony. Botsko testified that Blaud's motorcycle shows that it was hit by a piece of rubber from several inches above the pavement, consistent with a tread having been propelled into Blaud as opposed to Blaud running over the tread. Further, Rhoads' confirmation independent of Blaud that Blaud collided with a tire tread on an interstate freeway provides sufficient independent facts on which a fact finder could conclude that the tread came from another motor vehicle. These facts, confirmed by Botsko and by Rhoads, are sufficient to satisfy the corroboration requirements of the statute even if the fact finder later rejects them. *Scruggs,* 204 Ariz. at 249, ¶ 20, 62 P.3d at 994 ("The statute only requires corroboration of the claimant's depiction of an accident that was caused by such a vehicle."); A.R.S. § 20–259.01(M). Therefore, Blaud has complied with the requirements of subsection (M).

¶ 19 Blaud argues that his compliance with the requirements of subsection (M) entitles him to coverage under his policy because every UM policy is required to comply with the requirements of the UMA. Blaud, however, misunderstands the operation of subsection (M). While the statute requires the claimant to submit additional information in circumstances where a UM claim is being made in the absence of physical contact with an unidentified vehicle, the claimant's compliance with the statutory requirements does not establish coverage under the policy. It only satisfies the requirements for submitting a claim.

¶ 20 For example, a claimant may demonstrate that physical contact occurred between his vehicle and the unidentified vehicle that he alleges caused the accident. Yet the fact finder may still find that the unidentified vehicle did not cause the accident, rather the insured did. Similarly, in the absence of physical contact, a claimant may submit independent facts that corroborate his claim, and yet the fact finder may reject these facts in favor of other, more compelling explanations. Subsection (M) exists to limit fraudulent claims that might be asserted when insureds claim that an accident was caused by an unidentified vehicle. Compliance with these requirements does not, of itself, establish coverage, it merely allows claimants to pursue their claim. *See Scruggs,* 204 Ariz. at 247, ¶ 11, 62 P.3d at 992 ("Satisfying the corroboration requirement does not necessarily mean that [claimant] is entitled to payment on his claim."). Progressive, in theory, could offer evidence that established that the tire tread arrived on the freeway other than through the "use of an uninsured motor vehicle," or that another policy exclusion applies. Therefore, Blaud is not entitled to coverage merely because he has satisfied the requirements of subsection (M), and thus is not entitled to summary judgment. The trial court thus erred when it granted summary judgment as a matter of law in Blaud's favor.

■ ¶ 21 Blaud requests an award of attorneys' fees and costs incurred in this appeal under A.R.S. § 12–341.01 (2003). The successful party in an action to determine insurance coverage may recover attorneys' fees under A.R.S. § 12–341.01 at the discretion of the court. *Nationwide Mut. Ins. Co. v. Granillo,* 117 Ariz. 389, 395, 573 P.2d 80, 86 (App.1977). Because Blaud has not yet prevailed on his coverage claim his request is premature and we deny his request for an award of attorneys' fees and costs at this time. Should the trial court choose to do so, it is authorized to consider the fees and costs incurred in this appeal in determining whether and how much to award to the prevailing party as reasonable attorneys' fees.

### CONCLUSION

¶ 22 For the reasons discussed above, we affirm the holding implicit in the trial court's judgment that Blaud complied with the requirements of the UMA, but we reverse the summary judgement in favor of Blaud, and remand for further proceedings consistent with this opinion.

CONCURRING: PHILIP HALL, Presiding Judge, and PATRICIA K. NORRIS, Judge.

