**NATIONWIDE INSURANCE COMPANY, Petitioner,**

v.

**Mohamad ELCHEHIMI, Individually and as Parent and Next Friend of Khaled Elchehimi and Lukman Elchehimi, Minors, Respondent.**

No. 06–0106.

Supreme Court of Texas.

March 28, 2008.

Gregory R. Ave, Walters, Balido & Crain, L.L.P., Dallas TX, for Petitioner.

Garry Philip Cantrell, Cantrell Law Firm, Carrollton, TX, for Respondent.

Levon G. Hovnatanian, Christopher W. Martin, Martin Disiere Jefferson & Wisdom, Houston, TX, for Amicus Curiae.

Justice WAINWRIGHT delivered the opinion of the Court, joined by Chief Justice JEFFERSON, Justice HECHT, Justice BRISTER, Justice GREEN, Justice JOHNSON, and Justice WILLETT.

This breach of contract suit stems from the denial of coverage by Nationwide Insurance Company on a claim arising from a collision between insured Mohamad Elchehimi's vehicle and an axle-wheel assembly separated from an unidentified semi-trailer truck. The court of appeals reversed the trial court's grant of summary judgment in favor of Nationwide. Because there was no actual physical contact between Elchehimi's vehicle and the unidentified truck as required by statute to trigger the uninsured motorist coverage, we reverse the court of appeals' judgment.

On January 4, 2002, Mohamad Elchehimi's station wagon collided with a drive axle and attached tandem wheels that had separated from an eighteen-wheel semi-trailer truck. The unidentified truck, which was being driven in the opposite direction on a divided highway, did not stop. Momentum carried the axle-wheel assembly across the dividing median where it struck Elchehimi's vehicle, injuring the occupants and damaging the car. Elchehimi had purchased from Nationwide a standard Texas personal automobile insurance policy, including the optional statutorily defined unidentified motorist coverage. Nationwide denied Elchehimi's claim for uninsured motorist benefits because the impact between Elchehimi's vehicle and the axle-wheel assembly was not "actual physical contact" with an unknown "motor vehicle" as required by the terms of the policy and the Texas Insurance Code.

Elchehimi sued Nationwide for breach of contract and breach of the duties of good faith and fair dealing. Nationwide moved for summary judgment, arguing that no actual physical contact occurred between Elchehimi's vehicle and the unidentified truck. The trial court granted the motion. A divided court of appeals reversed, concluding that an issue of fact remained as to whether actual physical contact occurred. 183 S.W.3d 833, 839. Specifically, the court of appeals interpreted the Texas uninsured/underinsured motorist statute, then article 5.06–1(2)(d) of the Texas Insurance Code,[1] to require actual physical contact only with an "integral part" of an unidentified motor vehicle as a "result of an unbroken chain of events with a clearly definable beginning and ending, occurring in a continuous sequence" rather than actual physical contact with a motor vehicle. *Id.* at 838–39; *see also Brooks v. State Farm Mut. Auto. Ins. Co.,* 2003–0389, p. 7 (La.App. 4 Cir. 9/24/03); 855 So.2d 419, 424 (citing references omitted). Nationwide petitioned this Court for review.

The parties do not dispute the facts of the collision and agree that the following statutory provision, which provides the parameters of coverage for damage or injury caused by unidentified motorists in Texas, governs this dispute:

> [F]or the insured to recover under the uninsured motorist coverage if the owner or operator of any motor vehicle that causes bodily injury or property damage

---

1. In 2005, the Legislature repealed Article 5.06–1(2)(d) as part of the codification of the Texas Insurance Code. The same language now appears in section 1952.104(3) of the Texas Insurance Code. Accordingly, the Court will retroactively apply Section 1952.104(3).

*See Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 219–20 (Tex. 2002) (retroactive application is constitutional where the change is remedial and procedural and does not affect a vested right).

to the insured is unknown, *actual physical contact* must have occurred between the motor vehicle owned or operated by the unknown person and the person or property of the insured.

TEX. INS.CODE § 1952.104(3) (emphasis added). The relevant policy language is consistent with the statute. To survive summary judgment, Elchehimi must raise a fact issue that his vehicle's collision with the axle-wheel assembly qualified as "actual physical contact" with a "motor vehicle" or a legally recognized substitute for such contact.

Because there was actual physical contact between Elchehimi's vehicle and the axle-wheel assembly, we examine whether the assembly is a motor vehicle under the Texas Insurance Code. Section 1952.104(3) does not define motor vehicle. However, the common usage of the term motor vehicle does not include a single axle attached to two wheels. *See Slaughter v. Abilene State Sch.*, 561 S.W.2d 789, 791–92 (Tex. 1977). "Common usage has made the phrase 'motor vehicle' a generic term for all classes of self-propelled vehicles not operating on stationary rails or tracks." *Id.* at 792. In addition, other relevant statutory definitions aid our analysis. The Texas Insurance Code expressly incorporates the Texas Motor Vehicle Safety–Responsibility Act, chapter 601 of the Transportation Code. TEX. INS.CODE § 1952.101(a). Chapter 601 sets minimum coverage amounts for vehicle liability insurance, and those amounts explicitly apply to uninsured motorist coverage. TEX. TRANSP. CODE § 601.072. Because Section 1952.104(3) and Chapter 601 address the same subject matter—motor vehicle insurance—the definition of motor vehicle in section 601.002 of the Transportation Code is persuasive, if not controlling. Chapter 601 defines a motor vehicle as "a self-propelled vehicle designed for use on a highway, a trailer or semitrailer designed for use with a self-propelled vehicle, or a vehicle propelled by electric power from overhead wires and not operated on rails." TEX. TRANSP. CODE § 601.002(5).

■ A drive axle with two tandem wheels attached on one side lacks an engine or other means of propulsion. It is therefore neither a self-propelled vehicle nor a vehicle propelled by electric power from overhead wires. This wheel assemblage is not capable of carrying a load, nor can it be towed down a road by a self-propelled vehicle other than being dragged by or mounted underneath one, as Elchehimi's expert witness testified. The axle-wheel assembly is thus not a trailer or semitrailer designed for use with a self-propelled vehicle. The axle-wheel assembly is not a motor vehicle under Chapter 601. Applying the common usage of the term and the definition in Chapter 601, we conclude that physical contact with a detached axle and tandem wheels is not actual physical contact with a motor vehicle under the unidentified motor vehicle provision.

Elchehimi also argues that this collision involved a legally recognized substitute for the statute's actual physical contact requirement. In *Latham v. Mountain States Mutual Casualty Co.*, the court of appeals determined that the physical contact requirement could be satisfied through indirect contact where an unidentified vehicle first impacts an intermediary vehicle that in turn collides with an insured claimant. 482 S.W.2d 655, 657 (Tex. Civ.App.-Houston [1st Dist.] 1972, writ ref'd n.r.e.). The court of appeals held that "[w]here a Car A strikes Car B and propels it into Car C, there is physical contact between Car A and Car C" within the meaning of an automobile insurance policy that required physical contact with an unidentified vehicle. *Id.*

■ No Texas court, however, has ever relied on *Latham* to conclude that physical contact occurred where there was no "Car B." *Cf. Old Am. County Mut. Fire Ins. Co. v. Sanchez*, 81 S.W.3d 452, 462 (Tex.App.-Austin 2002) (observing, but not holding, that *Latham's* rule "survives in the fact situation . . . where car A hits car B which then hits car C" in a case where an uninsured motorist hit an insured's vehicle, causing the vehicle to collapse on the insured), *rev'd on other grounds*, 149 S.W.3d 111 (Tex.2004). Only two motor vehicles were involved in Elchehimi's collision: the unidentified truck and Elchehimi's station wagon. Because the axle-wheel assembly is not a motor vehicle, it cannot fill the role of an intermediary vehicle to provide indirect contact between the unidentified truck and Elchehimi's vehicle. *Latham* is further distinguishable because the court in *Latham* was interpreting insurance policy language, not a statute, and the policy language did not have an actual physical contact requirement. *Latham*, 482 S.W.2d at 657. Five years after *Latham*, the Legislature added the actual physical contact requirement to the uninsured motorist statute. *See* Act of May 6, 1977, 65th Leg., R.S., ch. 182, § 1, art. 5.06–1(2)(d), 1977 Tex. Gen. Laws 370, 371 (repealed 2005).

■ No other substitute exists for the requirement of actual physical contact with the motor vehicle itself. Texas courts have uniformly rejected the contention that a collision with cargo and other objects falling from a car satisfies the requirement of actual physical contact with a motor vehicle. *See, e.g., Tex. Farmers Ins. Co. v. Deville*, 988 S.W.2d 331, 333–34 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (holding that water pump falling from truck and striking insured was not actual physical contact with a motor vehicle); *Republic Ins. Co. v. Stoker*, 867 S.W.2d 74, 77–78 (Tex.App.-El Paso 1993) (holding that insured rear-ending another car that was trying to avoid furniture dropped on the highway by an unknown driver was not actual physical contact with an unknown vehicle), *rev'd on other grounds*, 903 S.W.2d 338 (Tex.1995); *Williams v. Allstate Ins. Co.*, 849 S.W.2d 859, 861 (Tex. App.-Beaumont 1993, no writ) (holding that collision between the claimant's vehicle and a steel pipe dropped from an exiting truck was not actual physical contact with a motor vehicle). Another court of appeals considering the issue of contact with parts of the vehicle itself, rather than simply cargo, has concluded that such contact is also not enough to satisfy this strict requirement. *See Smith v. Nationwide Mut. Ins. Co.*, No. 04–02–00646–CV, 2003 WL 21391534, at *1, 2003 Tex.App. LEXIS 5056, at *6–8 (Tex.App.-San Antonio June 18, 2003, pet. denied) (holding that collision between loading ramp that detached from trailer and insured's vehicle was not actual physical contact with a motor vehicle). We agree that a collision with a separated piece of a motor vehicle, such as an axle-wheel assembly, is not actual physical contact with the motor vehicle as specifically required by the statute.

■ The dissent argues we should follow the court of appeals' suggestion that Texas adopt an integral part test to determine whether actual physical contact occurred. 183 S.W.3d at 835. We decline, however, to adopt an integral part test not present in the text of the statute and inconsistent with the relatively bright line established by the Legislature. Moreover, such a test would be practically unmanageable, requiring a case-by-case analysis to determine if a part was substantial enough to serve as a proxy for a motor vehicle. This would lead to a line-drawing conundrum for courts of appeals. The Legislature did not create an exception to the

statute's requirement of actual physical contact with a motor vehicle, and we decline to do so.

In search of support for such an integral part test, the dissent and the court of appeals look to other state jurisdictions and the interpretation of those states' unidentified motorist statutes. Although interesting, we do not believe this analysis is necessary because the language of the Texas statute is not ambiguous. *See Tex. Dep't of Protective & Reg. Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex. 2004) ("If the statutory text is unambiguous, a court must adopt the interpretation supported by the statute's plain language unless that interpretation would lead to absurd results.") In addition, the dissent's citations show there is no trend from which to glean a majority rule. Of the seven states the dissent identifies as having physical contact requirements in their unidentified motorist statutes and as having considered the integral part test, two have statutory language different than Texas,[2] four have adopted the test,[3] and one has rejected it.[4] Of the four states with cases adopting the integral part test, three have done so only at the intermediate appellate court level. At best, there is guidance from the highest courts of two states, New York and South Carolina, and they reach opposite conclusions on the issue.

The dissent agrees that the Texas uninsured motorist statute should be liberally construed to protect insureds "who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles." *Stracener v. United Serv. Auto. Ass'n*, 777 S.W.2d 378, 382 (Tex.1989). Liberally construing a provision, however, does not permit divorcing its application from the words in the statute. The dissent states that our construction "does nothing to further the anti-fraud purpose behind the requirement of 'physical contact' with a 'motor vehicle.'" To the contrary, creation of an integral part test would force courts to draw lines in each case along a continuum, to determine whether a particular part was large or important enough to be "integral," whether the part was a piece of the vehicle or merely cargo, and whether the part was contemporaneously separated from the vehicle or had lain in the roadway long enough to become debris. All of these questions would open the door to uncertainty and potential fraudulent or fictitious claims, which the Legislature saw fit not to do. *See Davis*, 331 S.E.2d at 354 ("The requirement of physical contact with the unknown vehicle, and not just with an unattached part thereof, is a viable manner of preventing fraudulent, fictitious claims."). The Legislature drew a relatively bright line, and we decline to fuzz it up. Requiring contact with the motor vehicle honors the language enacted by the Legislature and enforces the legislative purposes of protecting insured motorists and preventing fraud.

The language of the statute compels our conclusion. The salient factor here is that

---

2. *See* La.Rev.Stat. Ann. § 22:680(1)(d)(i) (LEXIS through 2007 Sess.) (allowing testimony by a disinterested witness in place of actual physical contact); Wis. Stat. Ann. §§ 632.32(2)(a), .32(4)(a)(2)(b) (LEXIS through 2007 Sess.) (covering "hit-and-run" accidents with unidentified vehicles).

3. *See State Farm Fire & Cas. Co. v. Guest*, 203 Ga.App. 711, 417 S.E.2d 419, 422 (1992);

*Illinois Nat. Ins. Co. v. Palmer*, 116 Ill.App.3d 1067, 72 Ill.Dec. 454, 452 N.E.2d 707, 709 (1983); *Adams v. Mr. Zajac*, 110 Mich.App. 522, 313 N.W.2d 347, 349 (1981); *Allstate Ins. Co. v. Killakey*, 78 N.Y.2d 325, 574 N.Y.S.2d 927, 580 N.E.2d 399, 401 (1991).

4. *See Davis v. Doe*, 285 S.C. 538, 331 S.E.2d 352, 353–54 (1985).

the insured's vehicle did not make actual physical contact with the unidentified vehicle. Whether the item that did make contact with the insured's vehicle was initially a piece of the unidentified vehicle or was cargo that had fallen off is irrelevant—in either case the item is not a motor vehicle. For these reasons, and without hearing argument, we reverse the judgment of the court of appeals, render judgment for Nationwide, and order that Elchehimi take nothing. Tex.R.App. P. 59.1.

Justice O'NEILL filed a dissenting opinion, joined by Justice MEDINA.

Justice O'NEILL, joined by Justice MEDINA, dissenting.

An axle-and-wheel assembly detached from an unidentified tractor-trailer and, propelled by the vehicle's momentum, flew across the highway median, striking Mohamad Elchehimi's car and injuring its occupants. The Court concludes there was no actual physical contact between the two vehicles as the uninsured-motorist statute requires, and thus Elchehimi was not covered under his standard automobile insurance policy. The Court purports to rely upon the statute's plain language, but nothing in that language compels the Court's holding and the statute's remedial purpose clearly belies it. In my view, when an integral part of an unidentified vehicle is propelled by the vehicle's momentum and, in a continuous and unbroken sequence of events, collides with an insured's vehicle, "actual physical contact" with a "motor vehicle" has occurred and coverage is afforded under the statute. Because the Court holds otherwise, I respectfully dissent.

## I. The Statute

The uninsured-motorist (UM) statute was enacted to protect conscientious motorists from "financial loss caused by negligent financially irresponsible motorists." Act of Oct. 1, 1967, 60th Leg., R. S., ch 202, § 3, 1967 Tex. Gen. Laws 448, 449; see Stracener v. United Servs. Auto. Ass'n, 777 S.W.2d 378, 382 (Tex.1989). The statute protects motorists by requiring that all Texas automobile insurance policies provide coverage to the insured when the insured is hit by a motorist who is uninsured, underinsured, or unidentified.[1] Tex. Ins.Code §§ 1952.101–1952.104. The statute is designed to reward responsible motorists who purchase insurance by providing them with coverage when the at-fault party's insurer is unable to provide compensation for their injuries because the party is uninsured, underinsured, or unidentified. We have repeatedly and consistently held that because the UM statute is remedial, it should be construed liberally to give full effect to the Legislature's purpose in enacting it—to provide coverage to insured motorists. Old Am. County Mut. Fire Ins. Co. v. Sanchez, 149 S.W.3d 111, 115 (Tex.2004) ("Th[e] Court has recognized that, because of their remedial purposes, [sections of the UM statute] should be liberally interpreted to give effect to the public policy that led to their enactment."); Tex. Farm Bureau Mut. Ins. Co. v. Sturrock, 146 S.W.3d 123, 128 (Tex. 2004); Stracener, 777 S.W.2d at 382.

Under the UM statute, when the owner or operator of a vehicle who would otherwise be liable to the insured is unknown, "actual physical contact must have occurred between the motor vehicle owned or operated by the unknown person and

---

1. Elchehimi's vehicle was covered by Nationwide's standard Texas automobile insurance policy. That policy included UM coverage, as defined by the Texas Insurance Code. Both parties agree that interpretation of the UM statute governs the scope of coverage under the policy.

the person or property of the insured." TEX. INS. CODE § 1952.104(3). The Legislature understandably included this requirement to prevent fraud; insureds without collision coverage who are involved in one-car accidents might be tempted to claim a "phantom car" was at fault in order to obtain coverage if they did not have to prove there was "actual physical contact" with the unknown "motor vehicle." *Smith v. Nationwide Mut. Ins. Co.*, No. 04–02–00646–CV, 2003 WL 21391534, at *3, 2003 Tex.App. LEXIS 5056, at *4–*5 (Tex.App.-San Antonio June 18, 2003, pet. denied).

Whether the requirements of section 1952.104(3) are met when something less than the entire unknown vehicle collides with an insured vehicle is an issue of first impression for our Court, but our courts of appeals have decided a number of cases establishing some guiding principles. In *Latham v. Mountain States Mutual Casualty Co.*, for example, the court held that when an unknown vehicle strikes another vehicle, which in turn strikes the insured, the requirements of the section are met and coverage is afforded. 482 S.W.2d 655, 657 (Tex.Civ.App.-Houston [1st Dist.] 1972, writ ref'd n.r.e.).[2] However, collisions with cargo that has fallen from an unidentified vehicle or with debris in the roadway have been held not to constitute "actual physical contact" with a "motor vehicle." *Deville*, 988 S.W.2d at 333; *Williams*, 849 S.W.2d

at 861; *Smith*, 2003 WL 21391534, at *3, 2003 Tex.App. LEXIS 5056, at *7 (holding that a collision with the loading ramp of a trailer was not "actual physical contact" with a "motor vehicle").

Thus, our courts of appeals have reasonably concluded that contact with something other than a vehicle or a part of a vehicle, such as road debris or cargo, does not constitute contact with a "motor vehicle" for purposes of the UM statute. *Deville*, 988 S.W.2d at 333; *Williams*, 849 S.W.2d at 861. In *Smith*, the court of appeals took the analysis one step further, concluding that contact with a vehicle part does not trigger coverage. 2003 WL 21391534, at *3, 2003 Tex.App. LEXIS 5056, at *7. Although the court in *Smith* recognized that its holding was at odds with the UM statute's remedial purpose, it failed to consider that remedial statutes are to be construed liberally in order to further that purpose. *Id.* 2003 WL 21391534, at *1, 2003 Tex.App. LEXIS 5056, at * 1; *see Stracener*, 777 S.W.2d at 382.

In this case, the court of appeals considered and adopted the integral-parts test. 183 S.W.3d 833, 838–39. Under that test, there is "actual physical contact" with a "motor vehicle" for purposes of the UM statute when the insured is struck by an integral part of another vehicle and there is a temporal continuity between the part's detachment from the unknown vehicle and collision with the insured. *Id.* The tempo-

---

**2.** Both Nationwide and the Court insinuate that *Latham* is not good law or is inapplicable because the policy language at issue in *Latham* did not include the word "actual" and no court has extended the principle in *Latham* to other fact scenarios. However, our courts of appeals have repeatedly held that *Latham* applies to the current statute, even though the statute includes the word "actual," and have affirmed that it is still valid law. *E.g., Smith*, 2003 WL 21391534, at *2, 2003 Tex.App. LEXIS 5056, at *5; *Tex. Farmers Ins. Co. v. Deville*, 988 S.W.2d 331, 334 (Tex.App.-Hous-

ton [1st Dist.] 1999, no pet.); *Williams v. Allstate Ins. Co.*, 849 S.W.2d 859, 860–61 (Tex.App.-Beaumont 1993, no writ). When the Legislature first codified coverage of collisions with unknown motor vehicles in 1977, it included the "actual physical contact" requirement. Act of May 6, 1977, 65th Leg., R.S., ch. 182, § 1, art. 5.06–1(2)(d), 1977 Tex. Gen. Laws 370, 371. Prior to 1977, the UM statute did not mention unknown motor vehicles whatsoever. *See* Act of May 16, 1967, 60th Leg., R.S., ch. 203, § 1, art. 5.06–1, 1967 Tex. Gen. Laws 448, 448–49.

ral-continuity requirement exists in order to preserve the anti-fraud purpose of the "physical contact" element by requiring the insured to show that another motor vehicle was in fact the cause of the collision. *See Allstate Ins. Co. v. Killakey*, 78 N.Y.2d 325, 574 N.Y.S.2d 927, 580 N.E.2d 399, 401 (1991). I believe the integral-parts test comports with the statutory language and best serves its remedial purpose. *See Sanchez*, 149 S.W.3d at 115; *Sturrock*, 146 S.W.3d at 128; *Stracener*, 777 S.W.2d at 382.

Under the Court's analysis, though, only a collision with an entire motor vehicle is covered under the UM statute. That rigid construction undermines the Legislature's object in mandating UM coverage and does nothing to further the purpose advanced by section 1952.104(3)'s "actual physical contact" requirement. It is true that the integral-parts test is not expressed as such in the statute's text, but neither does the statute specify that actual physical contact with a motor vehicle *as a whole* is required. Both the integral-parts test and the Court's interpretation require construing a statute intended to be remedial in effect. Nothing in the statute itself compels the Court's conclusion that only a collision with the motor vehicle as a whole will satisfy the statute, and the Court's restrictive interpretation of section 1952.104(3) places that provision in tension with the UM statute's fundamental purpose. *See Smith*, 2003 WL 21391534, at *1, 2003 Tex.App. LEXIS 5056, at * 1. The integral-parts test, on the other hand, comports with the statutory language and furthers its underlying purpose. *See Stracener*, 777 S.W.2d at 382.

Moreover, the Court's construction does nothing to further the anti-fraud purpose behind the requirement of "physical contact" with a "motor vehicle." *See Deville*, 988 S.W.2d at 335 (Cohen, J., concurring).

Under both the integral-parts test and the Court's interpretation, the insured must show that "actual physical contact" occurred and that the contact was with an unknown motor vehicle. Whether that contact was with an integral vehicle part propelled into the insured's vehicle by a continuous and unbroken sequence of events, or was with an unknown vehicle as a whole, makes little difference in light of the statutory purpose to protect responsible motorists and at the same time prevent fraudulent claims.

In this case, no one questions that there was "actual physical contact" between the axle-and-wheel assembly and Elchehimi's vehicle, or that there was a temporal nexus between the assembly's detachment from the truck and the collision. Nor is there any question of fraud, or doubt that the collision was the unidentified truck's fault. Yet under the Court's analysis the Elchehimis, who responsibly purchased UM insurance, are denied coverage for their injuries. Nothing in the statutory language or purpose compels that result.

In reaching its holding today, the Court relies not on any definitions in the UM statute but on the Texas Transportation Code's definition of "motor vehicle": a "self-propelled vehicle designed for use on a highway, a trailer or semi-trailer designed for use with a self-propelled vehicle, or a vehicle propelled by electric power from overhead wires and not operated on rails." Tex. Transp. Code § 601.002(5). Texas Insurance Code section 1952.101(a), a part of the UM statute, references chapter 601 of the Transportation Code as the chapter that governs the minimum liability limits for automobile insurance and specifies who must carry such insurance for what kinds of vehicles. *See, e.g., id.* § 601.051. Thus, this definition of "motor vehicle" governs what types of vehicles must be insured and logically only includes

intact motor vehicles. In the case of vehicle collisions, however, the distinction between motor vehicles that as a whole cause damage and motor vehicles whose integral parts directly and immediately cause damage is illogical and undermines the purpose behind the UM statute. *See Killakey*, 574 N.Y.S.2d 927, 580 N.E.2d at 401. Furthermore, the definition of "motor vehicle" in section 601.002(5) of the Transportation Code is expressly applicable only to chapter 601 of the Transportation Code, Tex. Transp. Code § 601.002 (specifying definitions for use "[i]n this chapter"); there is no indication that it is designed to be applied in other contexts. I would decline to apply that definition here, where doing so is contrary to the purpose of the UM statute.

## II. Other Jurisdictions

The substantial majority of states with UM statutes that require hit-and-run coverage have considered language identical or similar to our UM statute and determined that coverage exists in situations far more attenuated than that presented here. In these circumstances, we should strive for uniformity as much as possible. *See Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 522 (Tex.1995). Eleven such states have statutes similar to ours in that they require "physical contact" or "actual physical

contact" with a "motor vehicle," "vehicle," or "automobile" to trigger coverage.[3] *See* Cal. Ins.Code § 11580.2(b)(1) (Deering 2007); Fla. Stat. Ann. § 627.736(4)(e)(1) (West 2008);[4] Ga.Code Ann. § 33–7–11(b)(2) (2007); 215 Ill. Comp. Stat. Ann. 5/143a(2)(i) (West 2007); Mich. Comp. Laws Serv. § 257.1112 (LexisNexis 2008); Miss. Code Ann. § 83–11–103(c)(v) (2008); Nev. Rev.Stat. Ann. § 690B.020(3)(f)(7) (Lexis-Nexis 2007); N.C. Gen. Stat. § 20–279.21(b)(3)(b) (2007);[5] N.Y. Ins. Law § 5217 (Consol.2008); W. Va.Code Ann. § 33–6–31(e)(iii) (LexisNexis 2007); Wis. Stat. Ann. §§ 632.32(2)(a), (4)(a)(2)(b) (West 2007);[6] *see generally* David J. Marchitelli, Annotation, *Uninsured Motorist Indorsement: Construction and Application of Requirement That There Be "Physical Contact" with Unidentified or Hit-and-Run Vehicle; "Hit-and-Run" Cases*, 79 A.L.R.5th 289 (2000). Another five states require either physical contact with the unidentified motor vehicle or, if there was no physical contact, that the insured meet additional evidentiary burdens, such as producing a disinterested eyewitness or proving by clear and convincing evidence that the accident was caused by another vehicle. *See* Ariz.Rev.Stat. § 20–259.01(M) (2007); La.Rev.Stat. Ann. § 22:680(1)(d)(i) (2008); S.C.Code Ann. § 38–77–170(2) (2007); Tenn.Code Ann.

---

**3.** Some states require coverage absent any physical contact requirement whatsoever. *E.g.*, Conn. Gen.Stat. Ann. § 38a–336 (West 2008); Okla. Stat. Ann. tit. 36, § 3636 (West 2007).

**4.** Although the Florida statute requires "physical contact," the Florida Supreme Court has held that the requirements of the statute are met if the insured can show that his or her injuries were "caused by" the identified vehicle even if there was no physical contact. *Lumbermens Mut. Cas. Co. v. Castagna*, 368 So.2d 348, 350 (Fla.1979).

**5.** The North Carolina statute uses the term "collision" instead of "physical contact," but the Supreme Court of North Carolina has interpreted the statute to require "physical contact." *Andersen v. Baccus*, 335 N.C. 526, 439 S.E.2d 136, 137–38 (1994).

**6.** The Wisconsin statute does not use the term "physical contact," but the Wisconsin Supreme Court has interpreted the "hit" in "hit-and-run" to require physical contact. *Theis v. Midwest Sec. Ins. Co.*, 232 Wis.2d 749, 606 N.W.2d 162, 165–66 (2000).

§ 56–7–1201(e)(1)(B) (2008); Wash. Rev. Code Ann. § 48.22.030(2), (8) (West 2008).

Of these sixteen jurisdictions, many have not had occasion to consider the integral-parts test because their courts have interpreted the requirement of "physical contact" with a "motor vehicle" more liberally than our courts have done. For example, some states require coverage when the insured's injuries are the result of contact with cargo, *e.g., Pham v. Allstate Ins. Co.,* 206 Cal.App.3d 1193, 254 Cal.Rptr. 152, 155 (1988), debris propelled by another vehicle, *e.g., So. Farm Bureau Cas. Ins. Co. v. Brewer,* 507 So.2d 369, 372 (Miss.1987); *Progressive Classic Ins. Co. v. Blaud,* 212 Ariz. 359, 132 P.3d 298, 300–01 (Ariz.Ct.App.2006); *Barfield v. Ins. Co. of N. Am.,* 59 Tenn.App. 631, 443 S.W.2d 482, 486 (Tenn.Ct.App.1968), or even when there is no contact at all, *e.g., Lumbermens Mut.,* 368 So.2d at 350 (Florida). These courts have generally reasoned that since the "physical contact" with a "motor vehicle" language can be interpreted in a number of ways and the UM statute is remedial, a liberal interpretation favoring coverage should be applied. *See, e.g., So. Farm Bureau,* 507 So.2d at 371–72; *Progressive Classic,* 132 P.3d at 300; *Pham,* 254 Cal.Rptr. at 155; *Barfield,* 443 S.W.2d at 486. Several of these courts have also noted that requiring contact with an entire vehicle does nothing to further the anti-fraud purpose of the physical contact requirement. *See, e.g., So. Farm Bureau,* 507 So.2d at 372; *Progressive Classic,* 132 P.3d at 300.

Seven of the sixteen states with statutes similar to Texas's have considered whether the requirements of the statute are met when a vehicle part becomes detached from an unidentified vehicle and makes contact with the insured's vehicle. Two of those states have found "physical contact" with a "motor vehicle" when any vehicle part becomes detached and strikes the insured. *Theis,* 606 N.W.2d at 163 (Wisconsin);[7] *Brooks v. State Farm Mut. Auto. Ins. Co.,* 855 So.2d 419, 425 (La.Ct.App. 2003). Four have adopted the more restrictive integral-parts test. *Killakey,* 574 N.Y.S.2d 927, 580 N.E.2d at 401 (New York); *State Farm Fire & Cas. Co. v. Guest,* 203 Ga.App. 711, 417 S.E.2d 419, 422 (1992); *Ill. Nat'l Ins. Co. v. Palmer,* 116 Ill.App.3d 1067, 72 Ill.Dec. 454, 452 N.E.2d 707, 707, 709 (1983);[8] *Adams v. Mr. Zajac,* 110 Mich.App. 522, 313 N.W.2d 347, 349 (1981). Only one has expressly rejected it. *Davis v. Doe,* 285 S.C. 538, 331 S.E.2d 352, 353 (1985).

Those courts that have either adopted the integral-parts test or determined that physical contact with any vehicle part is sufficient to require coverage have emphasized that the requirement that there be "physical contact" with a "motor vehicle" is designed to prevent fraud by ensuring that another vehicle was involved in the accident. *See Theis,* 606 N.W.2d at 168; *Killakey,* 574 N.Y.S.2d 927, 580 N.E.2d at 400; *Palmer,* 72 Ill.Dec. 454, 452 N.E.2d at 707; *Adams,* 313 N.W.2d at 348. However, requiring that a motor vehicle as a whole strike the insured's vehicle to trig-

---

**7.** In *Theis,* it was unclear whether the tractor-trailer part that struck the insured was debris that was propelled by another unidentified vehicle or whether the part detached from and was propelled by the same vehicle. 606 N.W.2d at 163. However, the Supreme Court of Wisconsin did not consider that distinction important. *Id.* The holding appears to be limited to vehicle parts and inapplicable to other types of road debris that might be propelled into traffic. *Id.* at 167.

**8.** The Supreme Court of Illinois has followed and approved of the reasoning in *Palmer. Hartford Accident & Indem. Co. v. LeJeune,* 114 Ill.2d 54, 101 Ill.Dec. 876, 499 N.E.2d 464, 466 (1986).

ger coverage does nothing to further the purpose of preventing fraud and frustrates the overarching remedial purpose of the UM statute, which is designed to compensate responsible motorists for injuries caused by negligent and irresponsible drivers. *See Theis,* 606 N.W.2d at 168; *Guest,* 417 S.E.2d at 421; *Adams,* 313 N.W.2d at 349. As the highest court of New York aptly stated:

> The remedy for distinguishing between valid and fraudulent hit-and-run claims should rest on the proof that there was, indeed, an unidentified vehicle and that physical contact with the vehicle caused an accident, not on artificial distinctions between accidents involving a vehicle and those which may involve parts which undeniably come from it.

*Killakey,* 574 N.Y.S.2d 927, 580 N.E.2d at 401.

All but one of the states to have considered the issue have determined that physical contact with a part or an integral part of a motor vehicle is sufficient to invoke coverage. Although these decisions are not binding on this Court, the weight of their authority is at least instructive. The Court rejects the integral-parts test on the premise that it would be practically unmanageable; however, the fact that so many other jurisdictions have applied the test for decades indicates otherwise.

\* \* \*

Because we are to interpret the UM statute liberally, and because the integral-parts test best furthers the statute's language and remedial purpose while preserving the anti-fraud objectives of the "actual physical contact" with a "motor vehicle" requirement, I would adopt that test and affirm the court of appeals' judgment. Be-

cause the Court does not, I respectfully dissent.