# Supreme Court of Texas

No. 23-0607

Renaissance Medical Foundation,

*Petitioner*,

v.

Rebecca Lugo, Individually and as Next Friend of I.B.,

*Respondent*

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

JUSTICE BLAND, joined by Chief Justice Blacklock and Justice Devine, concurring.

Occupations Code Section 162.0021 forbids nonprofit health organizations from exercising control inconsistent with their employed physician's professional judgment. Vicarious liability claims against these nonprofits that allege a physician's medical judgment caused the patient's injury thus have no merit absent allegations of the nonprofit's unlawful interference.

While I agree with much of the Court's opinion and its disposition, I disagree on two points. First, the suggestion that nonprofit health organizations may be "directly liable" for injuries a negligent physician

causes due to the nonprofit's inadequate policies is artful pleading insufficient to impose vicarious liability. Section 162.0021 forecloses such liability to the extent it rests on a physician's exercise of medical judgment as the cause of the injury.

Second, a qualifying nonprofit need only invoke the statute if the pleadings allege a physician's exercise of medical judgment caused the injury to establish a legal defense.[1] The burden then shifts to the nonmovant to raise a fact issue demonstrating that conduct outside the physician's medical judgment was a cause of the injury. To obtain summary judgment, a nonprofit is not required to rebut unpleaded allegations that (1) the nonprofit somehow controlled the physician's conduct without interfering with the physician's medical judgment; or (2) unlawfully interfered with that judgment.

Those disagreements aside, I agree that the trial court properly denied summary judgment. Sometimes the description of a case on appeal is unfamiliar to the trial court judge on the ground as the appellate process takes hold. While the nonprofit organization in this case preserved its argument that it had no right to control its employed physician's work, its motion for summary judgment did not invoke Occupations Code Section 162.0021. The motion instead focused on common law vicarious liability and the general principle that physicians

---

[1] As the Court recognizes, contractual assignment "is not the end of the analysis" because of the unique structure of the nonprofit health organization statute. *Ante* at 22. The statute prevents vicarious liability for uncontrollable conduct of physicians regardless of control assigned by contract. *See* Tex. Occ. Code. § 162.0021 (preventing control of a physician's professional judgment in violation of the statute or other law); *id.* § 162.0024(a) (stating that statutory requirements "may not be voided or waived by contract").

must exercise independent medical judgment. The motion did not adequately notify the nonmovants of the nonprofit's reliance on statutes that govern it and the import those statutes have for claims of vicarious liability against it. Accordingly, I concur in the Court's judgment.

## I

Rebecca Lugo alleges that Dr. Michael Burke placed a retractor during surgery that migrated when it should not have. Per the petition, the retractor migrated because (1) Dr. Burke contacted it, (2) a surgical technician handed a suction device to Dr. Burke, and the device or its tubing contacted it, or (3) the surgical technician independently contacted the retractor. Lugo sued Dr. Burke, Renaissance Medical Foundation—a certified nonprofit health organization—and the hospital that employed the surgical technician. Pertinent to this appeal, Lugo claims that Dr. Burke was negligent in performing the surgery, causing her daughter's injury, and that Renaissance is vicariously liable for Dr. Burke's negligence as his employer.

Applying the traditional factors of control, the court of appeals held that Dr. Burke was Renaissance's employee acting within the course and scope of his employment.[2] Given the common law indicia of control, the court of appeals largely held Section 162.0021 inapplicable as a defense to a vicarious liability claim.[3] The statutory text, however, precludes the court of appeals' holding.

___

[2] 672 S.W.3d 901, 914 (Tex. App.—Corpus Christi–Edinburg 2023).

[3] *See id.* at 911 ("The fact that Burke retained the right to exercise his 'independent medical judgment' in treating patients does not 'vitiate [Renaissance]'s right to control the details of his practice.'" (quoting *Murk v.*

3

**A**

Occupations Code Section 162.0021 provides that nonprofit health organizations cannot control an employee physician's medical judgment in a manner inconsistent with that judgment, even when traditional indicia of an employer–employee relationship exist. A certified nonprofit health organization "may not interfere with, control, or otherwise direct a physician's professional judgment in violation of this subchapter or any other provision of law, including board rules."[4] This language not only prohibits interference and control, but also uses the catch-all term "otherwise" to prohibit any other means of unlawfully directing a physician.[5] The clearest prohibited interference, as the Court notes, is attempted control of a physician's "independent medical

---

*Scheele*, 120 S.W.3d 865, 867 (Tex. 2003))); *id.* at 914 ("But the fact that [Renaissance] may not legally interfere with or control Burke's professional judgment has no bearing on the question of whether the alleged negligence took place within the course and scope of his employment.").

[4] Tex. Occ. Code § 162.0021.

[5] *See Otherwise*, Black's Law Dictionary (11th ed. 2019) ("By other causes or means."). The statutory prohibition on control departs from a recently approved section of the Restatement (Third) of Torts: Medical Malpractice. *See* Restatement (Third) of Torts: Medical Malpractice § 15(a), cmt. d (permitting vicarious liability for medical professionals employed by medical institutions even if the professionals retain independent medical judgment). We are bound to follow the Texas statute, not the Restatement. *See* Tex. Civ. Prac. & Rem. Code § 5.001(b) ("In any action governed by the laws of this state concerning rights and obligations under the law, the American Law Institute's Restatements of the Law are not controlling.").

judgment," which the statute's next section affirms an employed physician must retain.[6]

Ordinarily, vicarious liability claims hinge on "whether the principal has the right to control the agent with respect to the details of that conduct."[7] It is "the general common law notion that one who is in a position to exercise some general control over the situation must exercise it or bear the loss."[8] "[T]he right to control remains the 'supreme test' for whether . . . vicarious liability applies."[9]

As the Court aptly observes, a claim for vicarious liability without control "would be inconsistent with this basic principle underlying of our vicarious liability precedents."[10] Further, permitting such claims against a nonprofit for a physician's negligent acts would "frustrate the clear intent of the Legislature" by looking past the prohibition on the exact action—control—recognized as the "supreme test" for imposing

---

[6] Tex. Occ. Code § 162.0022(a), (d) (mandating that certified nonprofit health organizations shall "adopt, maintain, and enforce policies to ensure that a physician employed by the health organization exercises independent medical judgment when providing care to patients," and interpret policies to "reserve[] the sole authority to engage in the practice of medicine" to employed physicians).

[7] *State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625, 627 (Tex. 1998).

[8] *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018) (quoting *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540 (Tex. 2002) (plurality op.)).

[9] *Wolff*, 94 S.W.3d at 542 (quoting *Golden Spread Council, Inc. v. No. 562 of Boys Scouts of Am. v. Akins*, 926 S.W.2d 287, 290 (Tex. 1996)).

[10] *Ante* at 15.

vicarious liability.[11] Accordingly, I agree with the Court that the statutory prohibition eliminates vicarious liability claims against nonprofit health organizations based on a physician's negligent exercise of medical judgment.

**B**

The Court incorrectly suggests, however, that a nonprofit health organization may nonetheless be held "directly" liable for providing or failing to provide particular safety policies. While the Court disavows any view as to the viability of such claims beyond its general suggestion that they exist, policy-based direct liability claims wholly reliant on a physician's independent medical judgment as the cause of the injury plainly are not viable given Section 162.0021.[12] Such a claim seeks to hold health organizations liable for the acts of a physician—a vicarious theory. But, as the Court holds today, no vicarious liability lies for these claims because the statute forbids control over medical judgment. And no separate causal line exists from a policy's inadequacy when a physician's independent medical judgment is the alleged cause of the injury. Absent conduct attributable to the lack of such a policy, separate from the physician's negligence in exercising medical judgment, there cannot be liability.

Nonprofit health organizations have an affirmative obligation to adopt policies that "ensure that a physician employed by the [nonprofit]

---

[11] *PPG Indus., Inc. v. JMB/Hous. Ctrs. Partners L.P.*, 146 S.W.3d 79, 85 (Tex. 2004); *Wolff*, 94 S.W.3d at 542 (quoting *Akins*, 926 S.W.2d at 290).

[12] Lugo's operative petition contains no allegation of direct liability against Renaissance nor mention of policy, raising the question whether the Court's suggestions regarding direct liability are necessary to resolve this case.

health organization exercises independent medical judgment when providing care to patients."[13] Such policies must be drafted and interpreted to "reserve[] the sole authority to engage in the practice of medicine" to practicing physicians.[14] These statutory obligations highlight the lack of control that nonprofit health organizations can exercise over a physician's medical judgment. The Court recognizes as much but theorizes that a nonprofit health organization might face liability for "providing or failing to provide particular policies allowed by statute," even absent evidence that nonphysician conduct caused the patient's injury.[15] Our Court has never recognized such a claim, which relies on a causal link through physician judgment that the statute prohibits.

A causal connection between the absence of an adequate, injury-preventing policy and a patient's injury can be made through the negligent conduct of hospital employees.[16] In the case of physician

---

[13] Tex. Occ. Code § 162.0022(a).

[14] *Id.* § 162.0022(d).

[15] *Ante* at 18.

[16] *See Chesser v. LifeCare Mgmt. Servs., L.L.C.*, 356 S.W.3d 613, 634 (Tex. App.—Fort Worth 2011, pet. denied) (holding the evidence legally sufficient to show that, had a hospital management company implemented adequate policies governing care of patients following insertion of a stomach tube, a patient's overly tight bolster would have not occurred or would have been discovered by hospital staff—but the absence of policies resulted in the nursing staff providing inadequate care to the patient). This connection aligns with the requirement for other vicarious theories of liability like negligent hiring, training, or supervision. *See Wansey v. Hole*, 379 S.W.3d 246, 247 (Tex. 2012) ("[S]uch a claim requires that the plaintiff suffer some damages from the foreseeable misconduct of an employee hired pursuant to the defendant's negligent practices.").

negligence, however, the causal link between policy and injury is absent because Chapter 162 prohibits the control or direction of a physician's provision of medical care.[17]

We reached this conclusion in a similar context in *Columbia Medical Center of Las Colinas, Inc. v. Hogue*.[18] We held the evidence legally insufficient to establish that a patient contributed to his own injury based on testimony of his physicians that they "perhaps" or "possibly" would have changed their treatment with an adequate patient history.[19] Such "conjecture, speculation or mere possibility," we held, does not demonstrate the requisite "conduct that to a reasonable degree of medical certainty would have occurred" to establish proximate cause.[20]

Speculation that hospital personnel "perhaps" or "possibly" would have altered a physician's course of treatment similarly falls short of establishing causation. In *Columbia Valley Healthcare System, L.P. v. Zamarripa*, we held that an expert failed to show that hospital personnel

---

[17] *See* Tex. Occ. Code § 162.0021–.0022; *id.* § 151.002(13) (defining "practicing medicine" as the "diagnosis, treatment, or offer to treat" by a person holding themselves out as a physician or surgeon). The Court theorizes that a plaintiff could establish a causal link by showing that a nonprofit health organization "should have had policies in place that, in reasonable medical probability, would have averted an alleged negligent act or omission while respecting medical judgment." *Ante* at 19 n.13. It is this very respect for medical judgment, however, that severs any causal link between policy and injury because it forbids the nonprofits from dictating a physician's medical actions.

[18] 271 S.W.3d 238, 247 (Tex. 2008).

[19] *Id.*

[20] *Id.*

"had either the right or the means" to stop or delay the physician's decision to transport the patient that led to her injury.[21] The expert thus failed to establish a causal link between the hospital's alleged failure to comply with the standard of care and the injury.[22]

In stating that nonprofits might face liability for providing or failing to provide policies, the Court cites to our decision in *Certified EMS, Inc. v. Potts*.[23] But we did not approve of such claims in *Potts*. Rather, we observed that some lower courts "have held that direct and vicarious liability theories involve different sets of operative facts because 'the facts required to establish the defendant's vicarious liability . . . differ from the facts required to establish the . . . defendant's direct liability, i.e., [its] provision of particular policies and procedures.'"[24] A summary of lower court precedent is not support for

---

[21] 526 S.W.3d 453, 461 (Tex. 2017).

[22] *Id.* The courts of appeals have followed *Zamarripa* when theoretical hospital policies are alleged to hypothetically generate information altering a physician's course of treatment but are untraceable to employee conduct causing injury. In *Curnel v. Houston Methodist Hospital-Willowbrook*, for example, a plaintiff alleged that a hospital's failure to have a policy requiring patient medications to be evaluated for hepatoxicity led to a patient receiving an improper antibiotic, which led to improper data, which led physicians to proceed with a liver biopsy wherein one physician nicked the plaintiff's artery. 562 S.W.3d 553, 566–67 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Because hospital personnel lacked "'the right or the means to persuade' the physicians to cancel the biopsy" and thus prevent the nicked artery, the connection between the failure to implement a policy and the plaintiff's injury was too attenuated to establish proximate cause against the hospital. *Id.* at 567–68 (quoting *Zamarripa*, 526 S.W.3d at 461).

[23] 392 S.W.3d 625 (Tex. 2013).

[24] *Id.* (quoting *Fung v. Fischer*, 365 S.W.3d 507, 522 (Tex. App.—Austin 2012, no pet.)).

imposing liability absent proximate cause. To speculate that a policy would have prevented an injury when it is divorced from negligent conduct is nothing more than hindsight.[25]

## C

The language of Section 162.0021 presents a statutory barrier to vicarious liability based on an employed physician's negligent exercise of medical judgment.[26] A nonprofit health organization seeking summary judgment on such claims need only invoke the statute and show that the pleadings allege an injury attributable to a physician's negligence. It then falls to the nonmovant plaintiff to plead and adduce evidence raising a fact issue that the nonprofit committed negligence that falls outside the statute.[27] A nonmovant physician co-defendant may also respond with evidence that a nonprofit employer violated some

---

[25] *Hogue*, 271 S.W.3d at 247; *see Moreno v. M.V.*, 169 S.W.3d 416, 422 (Tex. App.—El Paso 2005, no pet.) (characterizing testimony that had a surgery occurred earlier an infection would have been prevented as "precisely the type of 20/20 hindsight analysis which does not provide . . . any evidence of causation"). We have heretofore rejected such a notion that business organizations can be liable for the acts of those they lack authority over. *See Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 691 (Tex. 2017) ("To establish the existence of an agency relationship, the evidence must demonstrate the purported agent's consent to act on the principal's behalf and *subject to the principal's control*, together with the purported principal's authorization for the agent to act on his behalf." (emphasis added)).

[26] *See* Tex. Occ. Code § 162.0021 (mandating that nonprofit health organizations "not interfere with, control, or otherwise direct a physician's professional judgment in violation of this subchapter or any other provision of law, including board rules").

[27] *See Nationwide Ins. Co. v. Elchehimi*, 249 S.W.3d 430, 433 (Tex. 2008) (placing burden on the plaintiff to raise a fact issue that its claim meets the statutory requirements for recovery).

aspect of the law or improperly interfered with the physician's judgment. But nonprofit health organizations should not be required to negate unpleaded claims. In suggesting otherwise, the Court fails to properly appreciate the statute's operation and our summary judgment jurisprudence for statutory defenses.[28]

Statutory mandates place a straightforward burden on the movant to invoke the statute at the summary judgment stage. Once invoked, the burden of raising a fact issue rests with the nonmovant. For example, the uninsured motorist statute requires physical contact for the insured to recover; thus, a movant need only demonstrate that the operative pleadings fail to allege such contact.[29] Similarly, when a statute contains an exclusive-remedy provision, a movant need demonstrate only that the statute precludes the claim based on the facts alleged.[30]

---

[28] *See Ante* at 23 ("[W]e must also consider whether the Practice showed that it could not exercise control regarding Dr. Burke's alleged negligence without interfering with his exercise of independent medical judgment.").

[29] *See Elchehimi*, 249 S.W.3d at 432–33, 436 (reversing and rendering judgment for the defendant who established in its summary judgment motion that no physical contact with a motor vehicle occurred).

[30] *See Southland Corp. v. Lewis*, 940 S.W.2d 83, 84 (Tex. 1997) (rendering judgment for a defendant who established in its summary judgment motion that it was an alcohol provider who sold to a plaintiff over eighteen, thus triggering the exclusive-remedy provision of the Alcoholic Beverage Code); *see also Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 474 (Tex. 2005) (affirming summary judgment for one employer after it established that the plaintiff was its employee and was covered by a worker's compensation policy, thus triggering the exclusive remedy provision of the Workers Compensation Act, but reversing it for a second employer who failed to establish that it was covered by a similar policy); *Mo-Vac Serv. Co. v. Escobedo*, 603 S.W.3d 119, 132 (Tex. 2020) ("We hold that [the nonmovant's] evidence does not raise a fact

Eschewing our precedent, the Court suggests that a nonprofit health organization movant must rebut not-yet-raised allegations. This elevated standard requires a movant to guess at *unpleaded* facts and negate them to obtain summary judgment.[31] The Court's suggested summary judgment requirements are not raised in the pleadings in this case, which are limited against Renaissance to allegations that Dr. Burke's negligent surgical technique caused Lugo's daughter's injuries.[32]

Renaissance, however, did not raise the unique defense it has based on Section 162.0021, which prohibits its control over its physician employee's medical judgment. Renaissance did not cite the applicable statute in its motion. Given the motion's focus on common law standards, it is not surprising that the trial court ruled that Dr. Burke's employment agreement alone provided sufficient indicia of control. Neither the trial court nor either party has yet to contend with

---

issue under the intentional-injury exception; thus, her claims are barred by the exclusive-remedy provision of the Act.").

[31] *Draughon v. Johnson*, 631 S.W.3d 81 (Tex. 2021), is distinguishable, as the nonmovant had pleaded the exception to the limitations defense at issue in that case. *See id.* at 97 ("Johnson moved for traditional summary judgment on limitations and Draughon raised the unsound-mind tolling statute. Johnson therefore had the burden to 'conclusively negate' Draughon's assertion of mental incapacity." (quoting *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019))).

[32] It is not part of Renaissance's initial burden to preemptively consider whether an allegation falls outside of the statute absent a pleading that it does. Instead, once the statute is invoked based on pleadings alleging an injury attributable to physician negligence, the nonmovant plaintiff must carry the burden to demonstrate which allegations, if any, are not within the statute's purview.

Section 162.0021's prohibition of control of physician employees by an employing nonprofit. [33] On remand, the parties can engage with the appropriate legal standard applicable to nonprofit health organizations who employ physicians.

*     *     *

For these reasons, I concur in the Court's judgment.

Jane N. Bland
Justice

**OPINION FILED:** May 23, 2025

---

[33] *See* Tex. R. Civ. P. 166a(c) ("The motion for summary judgment shall state the specific grounds therefor."); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) ("Consistent with the precise language of Rule 166a(c), we hold that a motion for summary judgment must itself expressly present the grounds upon which it is made. A motion must stand or fall on the grounds expressly presented in the motion.").